******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# STATE OF CONNECTICUT *v.*
# JAROSLAW CHALUPKA
# (AC 47556)

Elgo, Suarez and Seeley, Js.

*Syllabus*

Convicted, after a jury trial, of, inter alia, operating a motor vehicle while having an elevated blood alcohol content and evasion of responsibility in the operation of a motor vehicle, the defendant appealed. He claimed, inter alia, that the evidence presented at trial was insufficient to establish beyond a reasonable doubt that he operated a motor vehicle to support his conviction of those charges. *Held*:

This court reversed the defendant's conviction with respect to the charges of operating a motor vehicle while having an elevated blood alcohol content and evasion of responsibility in the operation of a motor vehicle, as the cumulative force of the state's evidence, viewed in the light most favorable to sustaining the jury's verdict, was insufficient to establish beyond a reasonable doubt that the defendant operated a motor vehicle, which was a required element of both charges.

Argued November 12, 2025—officially released March 3, 2026

*Procedural History*

Substitute information charging the defendant with the crimes of operating a motor vehicle while having an elevated blood alcohol content, interfering with an officer, and evasion of responsibility in the operation of a motor vehicle, brought to the Superior Court in the judicial district of New Britain, geographical area number fifteen, and tried to the jury before *Taylor, J.*; verdict and judgment of guilty, from which the defendant appealed to this court. *Reversed in part*; *judgment directed*; *further proceedings*.

*Alice Osedach Powers*, assigned counsel, for the appellant (defendant).

*Olivia M. Hally*, deputy assistant state's attorney, with whom, on the brief, were *Christian Watson*, state's attorney, and *Devant Joiner*, senior assistant state's attorney, for the appellee (state).

*Opinion*

SEELEY, J. The defendant, Jaroslaw Chalupka, appeals from the judgment of conviction, rendered following a jury trial, of operating a motor vehicle while having an elevated blood alcohol content in violation of General Statutes § 14-227a (a) (2),[1] interfering with an officer in violation of General Statutes § 53a-167a (a),[2] and evasion of responsibility in the operation of a motor vehicle in violation of General Statutes § 14-224 (b) (3).[3]

---

[1] General Statutes § 14-227a (a) provides in relevant part: "No person shall operate a motor vehicle while under the influence of intoxicating liquor or any drug or both. A person commits the offense of operating a motor vehicle while under the influence of intoxicating liquor or any drug or both if such person operates a motor vehicle . . . (2) while such person has an elevated blood alcohol content. For the purposes of this section, 'elevated blood alcohol content' means a ratio of alcohol in the blood of such person that is eight-hundredths of one per cent or more of alcohol, by weight . . . ."

Although § 14-227a (a) was the subject of an amendment in 2021; see Public Acts, Spec. Sess., June, 2021, No. 21-1, § 116; that amendment has no bearing on the merits of this appeal. In the interest of simplicity, we refer to the current revision of the statute.

[2] General Statutes § 53a-167a (a) provides: "A person is guilty of interfering with an officer when such person obstructs, resists, hinders or endangers any peace officer or firefighter in the performance of such peace officer's or firefighter's duties."

Although § 53a-167a was amended in 2022; see Public Acts 2022, No. 22-117, § 12; that amendment has no bearing on the merits of this appeal. In the interest of simplicity, we refer to the current revision of the statute.

[3] General Statutes § 14-224 (b) (3) provides: "Each operator of a motor vehicle who is knowingly involved in an accident that causes injury or damage to property shall at once stop and render such assistance as may be needed and shall give such operator's name, address and operator's license number and registration number to the owner of the injured or damaged property, or to any officer or witness to the injury or damage to property, and if such operator of the motor vehicle causing the injury or damage to any property is unable to give such operator's name, address and operator's license number and registration number to the owner of the property injured or damaged, or to any witness or officer, for any reason or cause, such operator shall immediately report such injury or damage to property to a police officer, a constable, a state police officer or an inspector of motor vehicles or at the nearest police precinct or station, and shall state in such report the location and circumstances of the accident causing the injury or damage to property and such operator's name, address, operator's license number and registration number."

On appeal, the defendant claims, inter alia, that the evidence presented at trial was insufficient to establish beyond a reasonable doubt that he operated a motor vehicle to support his conviction of operating a motor vehicle while having an elevated blood alcohol content and evasion of responsibility in the operation of a motor vehicle.[4] We agree and, accordingly, reverse in part the judgment of the court.

The following facts, which the jury reasonably could have found, and procedural history are relevant to the resolution of this appeal. On April 16, 2021, at approximately 10:05 p.m., the Berlin Police Department received an anonymous call reporting a single motor vehicle crash near the intersection of Old Brickyard Lane and Porters Pass.[5] The caller did not mention seeing anyone driving the vehicle or how many people were in it. Officers Aimee Krzykowski and Brendan Clark of the Berlin Police Department were dispatched to the scene of the accident in their police cruiser. They discovered the defendant wearing an illuminated headlamp and holding his cell phone in one hand and a pair of wire cutters in the other. Krzykowski observed the defendant "standing by a utility box attached to a light pole . . . ." A dark colored Dodge Caravan (Caravan), which had disabling damage to the front left tire, was "perpendicular in the roadway, facing the wrong direction . . . ." The officers did not see anyone other than the defendant in the area. They also did not receive a report of how long the Caravan had been there and, thus, did not know how long the vehicle had been there. Additionally, Krzykowski did not touch the engine compartment of the vehicle to see if it was warm to determine whether it had been operated recently. Video footage from a body camera on Clark, which was admitted

___

[4] In this appeal, the defendant has not challenged his conviction of interfering with an officer. See footnote 17 of this opinion.

[5] This section of Old Brickyard Lane and Porters Pass is a mix of residential buildings and businesses. Moreover, Old Brickyard Lane ends in a cul-de-sac. As a result, the area does not have heavy foot traffic at night.

into evidence at trial, shows that the rear sliding passenger door on the driver's side of the vehicle was open.

Krzykowski called out to the defendant to inquire about what he was doing, but the defendant did not answer in a coherent manner. The defendant appeared to be speaking with someone in another language on his cell phone. Krzykowski repeated her inquiry, and the defendant held up his cell phone and said something to the effect that he "was looking for this." The defendant's speech was "low and slurring," and, based on his demeanor, he appeared to be intoxicated. Krzykowski then asked the defendant to come toward her, but the defendant moved to the far side of the vehicle where the officers could not see him.

Suddenly, the defendant turned and ran from the officers, heading westbound down Old Brickyard Lane. Krzykowski and Clark pursued the defendant and commanded the defendant to stop running several times. The defendant did not comply with the officers' commands and, instead, ran into a nearby wooded area. Krzykowski and Clark followed the defendant and, again, ordered the defendant to stop running and to come out of the woods. The defendant ignored the officers' commands and entered the water of Brickyard Pond. He walked out about twenty to thirty feet and waded through the water at "chest to shoulder height." Sergeant Scott Schreiner of the Berlin Police Department, along with another officer, arrived at the scene to provide assistance. Eventually, Schreiner and Krzykowski located the defendant in the woods, "crouched over." Because the defendant's hands were not visible, Krzykowski commanded the defendant to show his hands, but he did not comply. Krzykowski drew her Taser and repeatedly commanded the defendant to show his hands. The defendant ignored the commands and, instead, stood up, prompting Krzykowski to deploy her Taser. Nevertheless, the defendant fled from the officers and ran from the woods into a parking lot, where he tripped and fell. Schreiner ordered him to remain on the ground, but the defendant ignored this command and began to stand up, at which point Schreiner deployed

his Taser to prevent the defendant from fleeing. The defendant was taken into custody, and officers called an ambulance to provide the defendant with medical care. Officers observed the defendant exhibit signs of intoxication, including difficulty balancing and walking; slow, slurred speech; the odor of alcoholic beverages on his breath and person; and glassy, red eyes. The defendant continued to act in an erratic and incoherent manner, as he screamed and cried "hysterically" while saying "I'm kidding. I'm sorry. I'm sorry. I'm scared." Officers located the defendant's Class A Connecticut commercial driver's license[6] in his wallet and identified him as Jaroslaw Chalupka.

The defendant was transported by ambulance to the Hospital of Central Connecticut in New Britain. Theodore Sherry, the attending physician for the emergency department, treated the defendant and testified at trial as to the medical treatment that the defendant received while at the hospital. Specifically, the defendant's blood was drawn and sent to the hospital laboratory for analysis. That analysis showed that the ethanol level[7] in the defendant's blood was 193 milligrams per deciliter, which indicated that it was "elevated" and "high." Thereafter, Schreiner applied for and obtained a search warrant to seize the defendant's medical records to determine whether the defendant's blood alcohol content exceeded the legal limit to operate a motor vehicle. Once Schreiner received a copy of the results of the defendant's blood test, he sent the results to the state forensic laboratory in Meriden. Thereafter, Mark Anderson, a forensic science examiner, performed "a mathematical conversion of the serum to whole blood and also from . . . milligrams to grams" and calculated the defendant's blood alcohol

---

[6] General Statutes § 14-44d (b) (1) provides that a Class A commercial driver's license authorizes holders to drive "[a]ny combination of vehicles with a gross vehicle weight rating (GVWR) of twenty-six thousand one pounds or more, provided the GVWR of the vehicle being towed is in excess of ten thousand pounds."

[7] Sherry testified that "[e]thanol is the chemical [that is] measure[d] in alcohol."

content to be 0.16 percent, or twice the legal limit of 0.08 percent to operate a motor vehicle.

On April 18, 2021, the defendant went to the Berlin Police Department. He met with Krzykowski and inquired about what had happened two days prior and the location of the Caravan. The defendant said that he did not remember the night in question and only knew he had woken up in the hospital. Krzykowski informed the defendant that the Caravan had been towed and that only the registered owner could retrieve the vehicle from the tow company. The defendant told Krzykowski that the Caravan belonged to his friend; however, he did not supply Krzykowski with his friend's name.[8]

The defendant subsequently was arrested and charged with operating a motor vehicle while having an elevated blood alcohol content in violation of § 14-227a (a) (2), interfering with an officer in violation of § 53a-167a (a), and evasion of responsibility in the operation of a motor vehicle in violation of § 14-224 (b) (3). The defendant elected a trial by jury. In his case-in-chief, the prosecutor presented testimony from three law enforcement personnel, Schreiner, Krzykowski, and Clark; the emergency room physician, Sherry; and the forensic examiner, Anderson.

After the prosecutor rested the state's case-in-chief, defense counsel filed a written motion for a judgment of acquittal. Specifically, as to the charges of operating a motor vehicle while having an elevated blood alcohol content and evasion of responsibility in the operation of a motor vehicle, defense counsel argued that the prosecutor failed to prove a required element of both charges, namely, that the defendant operated a motor vehicle.[9] In

[8] Officers determined that the Caravan was registered to Andrzej Gasztold, who did not testify at trial. When officers searched the Caravan, they did not find any identifying information related to the defendant in the vehicle.

[9] Defense counsel argued further that "there is no evidence any witnesses put [the defendant] behind the wheel of that vehicle. Not only is there no direct evidence of that, there's no circumstantial evidence of that," and, therefore, "for a jury to find [the defendant] guilty . . .

response, the prosecutor argued, inter alia, that he had established the element of operation because the police witnesses testified that no other individuals were in the immediate area, the defendant was connected to the Caravan because it belonged to a friend, and the defendant asked about the Caravan two days after his arrest.

The court denied the motion, and, thereafter, the defense presented testimony from Mitchell Pawlina, who had been disclosed as an alibi witness for the defendant prior to trial. Pawlina testified that he met the defendant for the first time that evening at a restaurant in Berlin, observed that the defendant was intoxicated and convinced the defendant that he should allow Pawlina to drive the defendant to his home, which was located on the same street on which Pawlina lived. Pawlina further testified that, after he had helped the defendant into the passenger seat of the Caravan, he drove the vehicle. Pawlina testified that, while he was driving the Caravan, its steering malfunctioned, causing the Caravan to go over a curb, which damaged the front tire and rendered the vehicle inoperable. According to Pawlina, the defendant, who had fallen asleep but was awakened when the Caravan ran over the curb, became "really upset about what happened" and "very aggressive" and threatened to hit Pawlina. After the defendant threatened him, Pawlina told the defendant that he was on his own and left, walking to his home, which was located nearby.

After defense counsel rested, he renewed the motion for a judgment of acquittal, which the court denied. The jury found the defendant guilty of the three charges. The court discharged the jury, after which defense counsel orally moved for a judgment of acquittal notwithstanding the verdict, which the court denied. On December 22, 2023, the court sentenced the defendant to a total effective term of 908 days of incarceration, execution suspended after 370 days, of which two days

[it] would have to find that the operation element was satisfied solely by consciousness of guilt evidence from [the defendant's] flight from the scene."

were mandatory, and three years of probation.[10] This appeal followed.

The defendant claims that the evidence presented by the state at trial was insufficient to support his conviction of operating a motor vehicle while having an elevated blood alcohol content and evasion of responsibility in the operation of a motor vehicle because it failed to establish beyond a reasonable doubt that he had operated the Caravan, which the state was required to establish with respect to both of the charges. The state contends that it provided ample circumstantial evidence from which the jury reasonably could have inferred that the defendant was driving the Caravan when it crashed. We agree with the defendant that the state failed to present sufficient evidence establishing that the defendant operated the Caravan, an element of both crimes that the state was required to prove beyond a reasonable doubt in order to convict the defendant. Therefore, we reverse the judgment of conviction as to these two crimes.

We first set forth our well settled standard of review applicable to sufficiency of the evidence claims. As our Supreme Court has stated: "In reviewing the sufficiency of the evidence to support a criminal conviction we apply a [two part] test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether [on] the facts so construed and the inferences reasonably drawn therefrom the [jury] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . .

---

[10] Specifically, the court sentenced the defendant to six months of incarceration, execution suspended after fifty days, with forty-eight hours as a mandatory minimum period of incarceration and two years of probation as to the charge of operating a motor vehicle while having an elevated blood alcohol content. The court sentenced the defendant to 364 days of incarceration, execution suspended after fifty days, and three years of probation with respect to the charge of evasion of responsibility in the operation of a motor vehicle. Finally, the court sentenced the defendant to 364 days of incarceration, execution suspended after nine months, and three years of probation as to the charge of interfering with an officer. The sentences were imposed consecutively.

"We note that the jury must find every element proven beyond a reasonable doubt in order to find the defendant guilty of the charged offense, [but] each of the basic and inferred facts underlying those conclusions need not be proved beyond a reasonable doubt. . . . If it is reasonable and logical for the jury to conclude that a basic fact or an inferred fact is true, the jury is permitted to consider the fact proven and may consider it in combination with other proven facts in determining whether the cumulative effect of all the evidence proves the defendant guilty of all the elements of the crime charged beyond a reasonable doubt. . . .

"Moreover, it does not diminish the probative force of the evidence that it consists, in whole or in part, of evidence that is circumstantial rather than direct. . . . It is not one fact, but the cumulative impact of a multitude of facts [that] establishes guilt in a case involving substantial circumstantial evidence. . . . In evaluating evidence, the [jury] is not required to accept as dispositive those inferences that are consistent with the defendant's innocence. . . . The [jury] may draw whatever inferences from the evidence or facts established by the evidence it deems to be reasonable and logical. . . .

"Finally, [a]s we have often noted, proof beyond a reasonable doubt does not mean proof beyond all possible doubt . . . nor does proof beyond a reasonable doubt require acceptance of every hypothesis of innocence posed by the defendant that, had it been found credible by the [jury], would have resulted in an acquittal. . . . On appeal, we do not ask whether there is a reasonable view of the evidence that would support a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that supports the [jury's] verdict of guilty." (Internal quotation marks omitted.) *State* v. *Dixon*, 353 Conn. 382, 417–18, 342 A.3d 161 (2025).

This court's inquiry necessarily begins with an examination of the element of operation under the charged offenses. With respect to the defendant's conviction of operating a motor vehicle while having an elevated blood

alcohol content, § 14-227a (a) provides in relevant part: "No person shall operate a motor vehicle while under the influence of intoxicating liquor or any drug or both. A person commits the offense of operating a motor vehicle while under the influence of intoxicating liquor or any drug or both if such person operates a motor vehicle . . . (2) while such person has an elevated blood alcohol content. For the purposes of this section, 'elevated blood alcohol content' means a ratio of alcohol in the blood of such person that is eight-hundredths of one per cent or more of alcohol, by weight . . . ." With respect to the defendant's conviction of evasion of responsibility in the operation of a motor vehicle, § 14-224 (b) (3)[11] provides in relevant part: "Each operator of a motor vehicle who is knowingly involved in an accident that causes injury or damage to property shall at once stop and render such assistance as may be needed and shall give such operator's name, address and operator's license number and registration number to the owner of the injured or damaged property, or to any officer or witness to the injury or damage to property . . . ." The operation of a motor vehicle, therefore, is an essential element of both crimes, which must be proven beyond a reasonable doubt. See *State* v. *King*, 346 Conn. 238, 251, 288 A.3d 995 (2023); *State* v. *Ragalis*, 235 Conn. App. 538, 549, 345 A.3d 844, cert. denied, 353 Conn. 934, 347 A.3d 877 (2025). In examining the element of operation for purposes of § 14-224 (b), we look for guidance to case law establishing what constitutes "operation" under § 14-227a (a). See, e.g., *State* v. *Ragalis*, supra, 549 (interpreting meaning of term "operating" in General Statutes § 53a-60d similarly to interpretation of "operating" in § 14-227a (a) (2)).

The element of operation is not defined under the statutory scheme. Our Supreme Court, however, recently

[11] Pursuant to General Statutes § 14-107 (b), "[w]henever there occurs a violation of section . . . 14-224 . . . proof of the registration number of any motor vehicle therein concerned shall be prima facie evidence in any criminal action or in any action based on an infraction that the owner was the operator thereof, except in the case of a leased or rented motor vehicle, such proof shall be prima facie evidence in any criminal action that the lessee was the operator thereof."

addressed what constitutes "operation" for purposes of §14-227a (a) in *State* v. *King*, supra, 346 Conn. 238. Specifically, the court stated that it "consistently has defined 'operation' as occurring 'when in the vehicle [a person] intentionally does any act or makes use of any mechanical or electrical agency [that] alone or in sequence will set in motion the motive power of the vehicle.' . . . [S]ee . . . *State* v. *Swift*, 125 Conn. 399, 403, 6 A.2d 359 (1939) ('[s]o if you find that the accused . . . manipulated the machinery of the motor for the purpose of putting the automobile into motion, the accused being in the car and in a position to control its movements, the accused would be guilty of operating a car under the influence of intoxicating liquor, whether the automobile moved or not' . . .). In applying this definition, we have explained that 'the term operating encompasses a broader range of conduct than does [the term] driving.' . . . *State* v. *Cyr*, [291 Conn. 49, 57, 967 A.2d 32 (2009)]. For example, in *State* v. *Haight*, 279 Conn. 546, 903 A.2d 217 (2006), we held that the element of operation could be satisfied even 'when a defendant had been seated in a vehicle that neither was in motion nor had its motor running.' . . . Although inserting the key into the ignition does not turn the motor on, '[n]othing in our definition of "operation" requires the vehicle to be in motion or its motor to be running.' Id., 552. Thus, our case law clearly holds that a defendant's conduct constitutes operation if he or she places the key in the ignition.

"We have never held, however, that inserting a key into the ignition is a prerequisite for a conviction under §14-227a (a). . . . Rather, the court must look to all the facts from which the fact finder reasonably could infer that the defendant undertook any act or made use of any mechanical or electrical agency that, alone or in sequence with other steps, would have set in motion the motive power of the vehicle." (Citations omitted; emphasis omitted.) *State* v. *King*, supra, 346 Conn. 267–70.

The present case differs from *King* and similar cases in that the defendant in the present case was not found

in the driver's seat of the Caravan when the officers arrived at the scene, nor was there any evidence concerning the location of the key to the Caravan, namely, whether the key was in the ignition, in the Caravan or on the defendant's person; rather, the defendant was standing nearby, outside of the vehicle. See, e.g., *State* v. *Sienkiewicz*, 162 Conn. App. 407, 411, 131 A.3d 1222 (evidence was sufficient to establish element of operation of motor vehicle when defendant was in driver's seat attempting to start vehicle, hood of vehicle was warm to touch and no one else was observed in vicinity of vehicle), cert. denied, 320 Conn. 924, 134 A.3d 621 (2016). That, however, does not necessarily preclude a finding of operation. Indeed, our Supreme Court has stated that "[t]he absence of witnesses to the plaintiff's operation of the vehicle is not dispositive on the issue of operation. To be sure, it is often the case that police officers investigate § 14-227a violations after the intoxicated driver has ceased operating the vehicle." *Murphy* v. *Commissioner of Motor Vehicles*, 254 Conn. 333, 347, 757 A.2d 561 (2000).[12] In the present case, therefore, we must determine whether "the cumulative force of [the] circumstantial evidence was sufficient to satisfy the element of operation"; *State* v. *Sienkiewicz*, supra, 411; as "[t]here is no requirement that the fact of operation be established by direct evidence." (Internal quotation marks omitted.) Id., 410.

In *State* v. *Teti*, 50 Conn. App. 34, 716 A.2d 931, cert. denied, 247 Conn. 921, 722 A.2d 812 (1998), the defendant claimed on appeal that the evidence was insufficient to support his conviction of operating a motor vehicle while under the influence of intoxicating liquor or drugs in violation of § 14-227a (a) because it did not establish beyond a reasonable doubt that he operated a motor

---

[12] We note that, although the issue in *Murphy* concerned the sufficiency of the evidence in the administrative record to establish probable cause that the plaintiff in that case violated § 14-227a, which requires a lower standard of proof than in a criminal matter such as the present case, the court's statements regarding operation for purposes of § 14-227a nevertheless inform our analysis of this issue. See *Murphy* v. *Commissioner of Motor Vehicles*, supra, 254 Conn. 334, 347.

vehicle. Id., 37. In *Teti*, this court concluded that the jury reasonably could have found that, at approximately 1:30 a.m., a witness awoke to the sound of spinning tires, looked out his window, and saw someone inside a vehicle that was stuck in a snowbank. Id., 36. The witness, who could not identify the person inside the vehicle but saw no one else in the area, called the police. Id. Five or ten minutes later, the witness looked outside again and saw someone standing near the driver's door of the vehicle. Id. The first police officer to arrive at the scene "did not see anyone in or near the vehicle" but "did see footprints that went from the driver's door to the back of the vehicle and then away from the vehicle. [The officer] saw no footprints other than those and his own." Id. While that officer went to speak with the witness, a second police officer arrived at the scene, followed by the defendant, who was asked if he knew what had happened. Id. The defendant, who admitted that the vehicle was his, denied drinking alcohol that evening and stated that a friend had driven the vehicle. Id., 36–37. Because the defendant was staggering and slurring his speech, the officers administered field sobriety tests, which the defendant failed, and he was subsequently arrested. Id., 37. The defendant and his neighbor, Tina Espinosa, testified at trial that Espinosa had borrowed the defendant's car and was driving it when it slid into the snowbank. Id.

On appeal in *Teti*, this court concluded that "the circumstantial evidence, when viewed in the light most favorable to sustaining the verdict, was sufficient for a jury to find that the defendant was the operator of the vehicle. First, [the second officer] testified that there was only one set of footprints coming from the vehicle and that the footprints matched the defendant's. Moreover, the only footprints in the area were those of the defendant and the police officers. Therefore, the jury reasonably could have concluded that the defendant operated the vehicle and reasonably could have rejected the defendant's claim that either a snowplow destroyed Espinosa's footprints or snow covered them. Footprints,

together with other circumstantial evidence of guilt, are sufficient to sustain a conviction. . . .

"Second, both times within a ten minute period when [the witness] looked out his window, he saw someone standing by the vehicle. The defendant conceded that he was the person whom [the witness] saw the second time. The jury reasonably could have found that the defendant did not have time between sightings to go home and return to the accident scene. Therefore, the jury reasonably could have concluded that [the witness] saw the defendant each time that he looked out of his window.

"Third, there was evidence of the defendant's consciousness of guilt. A jury can properly draw an inference from consciousness of guilt evidence. . . . In this case, evidence of guilt consisted of the defendant's **(1)** ignoring [the second officer's] initial question of what happened, **(2)** claiming that he had been riding in the vehicle with his friends and **(3)** denying to the officers that he had been drinking. From that evidence, the jury reasonably could have concluded that the defendant was trying to hide from the officers that he had operated a motor vehicle while intoxicated." (Citations omitted.) Id., 40.

In the present case, the state relies on *Teti* in support of its contention that it presented ample circumstantial evidence to prove the element of operation. We conclude that the state's reliance on *Teti* is misplaced, as *Teti* is factually distinguishable from the present case. In *Teti*, this court concluded that the jury reasonably could have found that the defendant operated the vehicle on the basis of the circumstantial evidence presented, which included evidence showing that **(1)** there was only one set of footprints in the snow coming from the vehicle and that those footprints matched those of the defendant, **(2)** the only footprints in the snow were those of the defendant and the responding police officers, **(3)** the defendant conceded that he was the person whom the witness saw the second time the witness looked out his window, and **(4)** the defendant ignored the second officer's initial question of what happened, claimed that

he had been riding in the vehicle with his friends, and denied to the officers that he had been drinking, which demonstrated consciousness of guilt. Id.

The present case, by contrast, lacks the type of distinguishing evidence in *Teti* that supported a reasonable inference of operation, namely, the footprint evidence and the defendant's concession that he was the sole person seen by the witness standing near the vehicle before the police arrived. In the present case, there is no eyewitness testimony concerning the accident or when or how it happened. Although the absence of such testimony is not necessarily fatal to the state's case, there must be some evidence in the record from which the jury could have made a reasonable inference of operation. The defendant was not the registered owner of the vehicle; see General Statutes § 14-107 (b); and the police did not locate any documents or other items in the Caravan connecting the defendant to the vehicle. Moreover, the responding officers did not touch the hood of the Caravan or investigate whether the Caravan recently had been operated. See *State* v. *Sienkiewicz*, supra, 162 Conn. App. 411 (evidence supporting element of operation included that defendant was in driver's seat of Camaro attempting to start vehicle when officer arrived, officer did not observe anyone else in vicinity, and hood of vehicle was warm to touch, which indicated to officer that vehicle recently had been running).

The state points to the following evidence in the record, which it claims was sufficient to demonstrate operation: (1) the defendant was the only individual in the area when the police arrived and he was standing near the disabled Caravan, (2) the body camera footage shows that "the driver side door of the [Caravan] was open and not the passenger side, where the defendant claimed to be when the vehicle crashed," (3) the defendant had a "connection" with the Caravan because he went to the police department and inquired about it two days after the incident, and (4) the defendant fled from the scene, which demonstrated consciousness of guilt. According

to the state, this circumstantial evidence, like the circumstantial evidence in *Teti*, was sufficient to support a reasonable inference that the defendant was operating the Caravan when it hit the curb and became disabled. We do not agree.

The evidence does show that the defendant was standing near the disabled Caravan and was the only person in the area of the Caravan when the officers arrived at the scene. "[M]ere presence is not enough to support an inference of dominion or control, [but when] there are other pieces of evidence tying the defendant to dominion [or] control, the [finder of fact is] entitled to consider the fact of [the defendant's] presence and to draw inferences from that presence and the other circumstances linking [the defendant] to the crime. . . . [S]ee also *State* v. *Rhodes*, [335 Conn. 226, 241, 249 A.3d 683 (2020)] (some connection or nexus individually linking the defendant to the contraband is required . . .); *State* v. *Delossantos*, 211 Conn. 258, 278, 559 A.2d 164 ([p]resence alone, unilluminated by other facts is insufficient proof of possession . . .), cert. denied, 493 U.S. 866, 110 S. Ct. 188, 107 L. Ed. 2d 142 (1989)." (Internal quotation marks omitted.) *State* v. *Jordan*, 236 Conn. App. 168, 186–87, 347 A.3d 912 (2025), cert. denied, 354 Conn. 903, 349 A.3d 18 (2026); see *State* v. *Dawson*, 340 Conn. 136, 147–49, 263 A.3d 779 (2021) (discussing two kinds of possession, actual and constructive); see also *United States* v. *Johnson*, 513 F.2d 819, 823–24 (2d Cir. 1975) ("[a]bsent evidence of . . . purposeful behavior, mere presence at the scene of a crime, even when coupled with knowledge that at that moment a crime is being committed, is insufficient to prove aiding and abetting or membership in a conspiracy"). Thus, the defendant's presence at the scene is not sufficient by itself to establish the element of operation and must be considered in combination with other evidence.

Second, the record shows that the rear passenger sliding door to the Caravan, which is located on the driver's side of the vehicle, was open when the officers arrived,

not the driver's door to the vehicle. The fact that the rear passenger door on the driver's side of the Caravan was open, as opposed to the driver's door, does not support an inference that the defendant was operating the Caravan. In other words, it does not add to an inference of operation or dispel the contention that the defendant was a passenger in the vehicle. As a result, we conclude that this evidence does not provide a basis from which the jury reasonably could have inferred that the defendant had operated the Caravan. Moreover, the same is true with respect to the fact that the defendant, who was not the registered owner of the Caravan,[13] inquired about it subsequent to the accident. We do not agree that the defendant's inquiry subsequent to the accident lends itself to a reasonable inference that he was operating the Caravan at the time of the accident.

The state's evidence concerning operation, thus, primarily consisted of the consciousness of guilt evidence.[14] Our analysis of this evidence is guided by the following legal principles. "In a criminal trial, it is relevant to show the conduct of an accused, as well as any statement made by him subsequent to the alleged criminal act, which may fairly be inferred to have been influenced by the criminal act." (Internal quotation marks omitted.) *State* v. *Cooper*, 353 Conn. 510, 561, 343 A.3d 465 (2025). Such evidence is referred to as consciousness of guilt evidence. Our Supreme Court "repeatedly [has] held that

---

[13] See footnote 11 of this opinion.

[14] We note that currently pending before our Supreme Court is a case concerning jury instructions pertaining to consciousness of guilt evidence. See *State* v. *Kim* (Docket No. SC 21086). In that appeal, our Supreme Court invited amici curiae to file briefs addressing the following questions: (1) "Should the Supreme Court exercise its supervisory authority either to abandon or to limit the trial court's use of the consciousness of guilt jury instruction, for which § 2.6-3 of the Connecticut Criminal Jury Instructions provides that, '[i]n any criminal trial it is permissible for the state to show that conduct or statements made by a defendant after the time of the alleged offense may have been influenced by the criminal act; that is, the conduct or statements show a consciousness of guilt?' " and (2) "If the Supreme Court exercises its supervisory authority to limit the trial court's use of the consciousness of guilt jury instruction, under what circumstances should its use be permitted?"

a jury may infer guilt based on consciousness of guilt evidence in conjunction with other evidence . . . . *State* v. *Davis*, 324 Conn. 782, 797 n.8, 155 A.3d 221 (2017); see also *State* v. *Morelli*, 293 Conn. 147, 154, 976 A.2d 678 (2009) (evidence of consciousness of guilt, along with other evidence, provided sufficient evidence to prove that defendant was under influence of intoxicating liquor, which is essential element of offense of operating motor vehicle while under influence of intoxicating liquor) . . . ." (Internal quotation marks omitted.) *State* v. *Rodriguez*, 337 Conn. 175, 201, 252 A.3d 811 (2020). In particular, "[f]light, when unexplained, tends to prove a consciousness of guilt. . . . The flight of the person accused of a crime is a circumstance [that], *when considered together with all the facts of the case*, may justify an inference of the accused's guilt." (Emphasis added; internal quotation marks omitted.) *State* v. *Patrick M.*, 344 Conn. 565, 577, 280 A.3d 461 (2022).[15]

Thus, similar to the evidence of the defendant's presence at the scene of the accident, consciousness of guilt evidence, by itself, is not sufficient to support an inference of guilt; rather, such an inference can be made only when consciousness of guilt evidence is considered in combination with other evidence. Moreover, it is also important to note that "[t]he flight of the person accused of crime is a circumstance which, when considered

[15]We recognize that "[e]vidence that an accused has taken some kind of evasive action to avoid detection or prosecution for a crime, such as flight, is quintessential consciousness of guilt evidence. See *State* v. *Oliveras*, 210 Conn. 751, 759, 557 A.2d 534 (1989); see also, e.g., *State* v. *Rhodes*, [supra, 335 Conn. 243]. [T]he fact that ambiguities or explanations may exist [that] tend to rebut an inference of guilt does not render [such] evidence . . . inadmissible but simply constitutes a factor for the jury's consideration. . . . *State* v. *Coccomo*, 302 Conn. 664, 670, 31 A.3d 1012 (2011). [I]t is the province of the jury to sort through any ambiguity in the evidence in order to determine whether [such evidence] warrants the inference that [the defendant] possessed a guilty conscience." (Internal quotation marks omitted.) *State* v. *Jones*, 351 Conn. 324, 341, 330 A.3d 118 (2025); see also *State* v. *Grajales*, 181 Conn. App. 440, 449, 186 A.3d 1189 ("[e]vidence of flight from the scene of a crime [is] inherently ambiguous" (internal quotation marks omitted)), cert. denied, 329 Conn. 910, 186 A.3d 707 (2018).

together with all the facts of the case, may justify [only] an inference of the accused's guilt. It does not raise a presumption of guilt." (Internal quotation marks omitted.) *State* v. *Rosa*, 170 Conn. 417, 433, 365 A.2d 1135, cert. denied, 429 U.S. 845, 97 S. Ct. 126, 50 L. Ed. 2d 116 (1976). The question before this court, therefore, is whether the consciousness of guilt evidence—the defendant's flight—when considered with the evidence of the defendant's presence at the scene of the accident and the fact that no other individuals were seen in the area, was enough to establish beyond a reasonable doubt that the defendant operated the Caravan. See generally *State* v. *Dixon*, supra, 353 Conn. 421–22. We conclude that it was not sufficient to meet that "weighty burden imposed on the state . . . ." (Internal quotation marks omitted.) *State* v. *Ervin B.*, 202 Conn. App. 1, 7, 243 A.3d 799 (2020).

"Under bedrock principles of our criminal justice system, it is obviously not sufficient for the state to prove simply that it is more likely than not that the defendant [committed the offense], or even that the evidence is clear and convincing that he [committed the offense]. . . . Our Supreme Court has described the beyond a reasonable doubt standard as a subjective state of near certitude . . . ." (Internal quotation marks omitted.) Id.; see also *State* v. *Dawson*, supra, 340 Conn. 147 ("[I]t does not 'satisfy the [c]onstitution to have a jury determine that the defendant is probably guilty.' . . . '[When] the evidence is in equipoise or equal, the [s]tate has not sustained its burden [of proof] . . . .'" (Citation omitted; emphasis omitted.)).

As we have stated, there were no eyewitnesses to the accident, the anonymous caller who reported the accident to the police did not mention seeing anyone driving the vehicle or how many people were in it, and there was no evidence found in the vehicle suggesting that the defendant was the driver or owner of the vehicle. The location where the Caravan became disabled is a low traffic area, Clark testified that the police could not "tell exactly what

time the vehicle got there," and Krzykowski similarly testified that she did not know how long the Caravan was there and that there were no reports of how long the vehicle was there. The state's case rested on the evidence concerning the defendant's presence at the scene, and the facts that no one else was seen in the vicinity and that the defendant fled from the police, which the state contends provided a sufficient basis for the jury reasonably to infer that the defendant operated the Caravan. Our review of the record in this case leads us to conclude that any such inference would have "depart[ed] from the realm of reasonable inferences that a jury permissibly may draw into pure speculation that cannot be a permissible basis for a criminal conviction." *State* v. *Ervin B.*, supra, 202 Conn. App. 9.

"As demonstrated by our Supreme Court's recent decision in *State* v. *Rhodes*, [supra, 335 Conn. 226], the 'line between permissible inference and impermissible speculation is not always easy to discern.' . . . Id., 238. 'When we infer, we derive a conclusion *from proven facts* because such considerations as experience, or history, or science have demonstrated that there is a likely correlation between those facts and the conclusion. . . . [I]f the correlation between the facts and the conclusion is slight, or if a different conclusion is more closely correlated with the facts than the chosen conclusion, the inference is less reasonable. At some point, the link between the facts and the conclusion becomes so tenuous that we call it speculation.'" (Emphasis in original.) *State* v. *Ervin B.*, supra, 202 Conn. App. 11.

In the present case, we are not convinced, on the basis of our review of the cumulative force of the evidence presented by the state, considered in the light most favorable to sustaining the verdict, that "it establishes anything more than a temporal and spatial nexus" between the defendant and the Caravan; *State* v. *Dawson*, supra, 340 Conn. 163; and it, thus, does not support a *reasonable* inference that the defendant had operated the Caravan. See *State* v. *Reynolds*, 264 Conn. 1, 97, 836 A.2d

224 (2003) ("An inference is not legally supportable . . . merely because the scenario that it contemplates is remotely possible under the facts. To permit such a standard would be to sanction fact-finding predicated on mere conjecture or guesswork. Proof by inference is sufficient, rather, only 'if the evidence produces in the mind of the trier a *reasonable belief in the probability of the existence* of the material fact.' " (Emphasis in original.)), cert. denied, 541 U.S. 908, 124 S. Ct. 1614, 158 L. Ed. 2d 254 (2004); *State* v. *Sivri*, 231 Conn. 115, 131, 646 A.2d 169 (1994) ("[I]nferences which do not have a basis in facts established by the evidence cannot be drawn or relied upon to sustain a verdict. . . . The jury may not resort to speculation and conjecture." (Citation omitted; internal quotation marks omitted.)). In deciding whether the state had met its burden of proving beyond a reasonable doubt the element of operation, "the jury was not permitted to guess at possibilities or speculate" that the defendant had operated the Caravan simply because he was standing in the vicinity of the vehicle when the officers arrived with no one else around and subsequently fled. *State* v. *Ervin B.*, supra, 202 Conn. App. 11–12.

In the present case, the state did not present any evidence akin to the footprints in the snow in *Teti*. Without something more than the defendant's sole presence at the scene and his flight,[16] the jury would have had to

[16] We note that, even in administrative appeals from license suspensions for operating a motor vehicle while under the influence of intoxicating liquor or drugs, which involve a much lower burden of proof of probable cause; see footnote 12 of this opinion; this court and our Supreme Court consistently have concluded that an inference of operation was reasonable with more than presence and consciousness of guilt evidence. See, e.g., *Murphy* v. *Commissioner of Motor Vehicles*, supra, 254 Conn. 347–48 (record contained sufficient circumstantial evidence demonstrating that plaintiff drove vehicle to location from which vehicle rolled into river given evidence that plaintiff owned vehicle, her breath smelled of alcohol and she failed field sobriety tests, plaintiff testified that she was driving past scenic area when she decided to pull over and take photographs, and police arrived shortly after time at which plaintiff testified that occurred); *Mata* v. *Commissioner of Motor Vehicles*, 221 Conn. App. 25, 38, 299 A.3d 1262 (2023) (reasonable inference that plaintiff was operator of vehicle could be made

invade "the realm of speculation and conjecture" to conclude that the defendant operated the Caravan. *State* v. *DeCoster*, 147 Conn. 502, 505, 162 A.2d 704 (1960); see, e.g., *State* v. *Comollo*, 21 Conn. App. 210, 216–17, 572 A.2d 1037 ("[W]e . . . conclude that sufficient evidence existed to satisfy the element of operation [in addition to the defendant's admission]. In reaching this conclusion we have considered the following: The motor of the car had recently been turned off, as evidenced by the warmth of the car's hood; there were no other individuals within view either walking for assistance or leaving the scene of the accident on foot; the defendant had just been inside the car as evidenced by the dry condition of his clothing on a rainy day; this car was the only one in sight; the defendant knew where to find the car's registration and insurance information and he did not question the

on basis of evidence that plaintiff was in Jeep when officer arrived, plaintiff was only individual apart from responding officers at scene of accident, plaintiff was registered owner of Jeep, and photograph of accident scene showed driver's side door of Jeep open, headlights on, and dashboard and center console screen lit, all of which supported inference that Jeep was being operated by someone when it hit stone wall); *Adams* v. *Commissioner of Motor Vehicles*, 182 Conn. App. 165, 175, 189 A.3d 629 (even though there were no witnesses to plaintiff's operation of vehicle, operation could be inferred from evidence that plaintiff was standing beside vehicle with substantial front end damage and, when asked what had happened by police officer, plaintiff stated that he had been driving vehicle when brakes malfunctioned and he struck traffic cone in roadway, as plaintiff's statements constituted substantial evidence that he had operated vehicle), cert. denied, 330 Conn. 940, 195 A.3d 1134 (2018); *Kirei* v. *Hadley*, 47 Conn. App. 451, 453, 705 A.2d 205 (1998) (sufficient evidence was presented at trial showing that plaintiff operated vehicle in question, even though plaintiff was found two tenths of mile away from accident scene and there were no eyewitnesses to his operation of vehicle, as operation could be inferred on basis of facts that plaintiff claimed ownership of vehicle, car was warm, and plaintiff admitted to driving recently); *O'Rourke* v. *Commissioner of Motor Vehicles*, 33 Conn. App. 501, 508–509, 636 A.2d 409 (plaintiff's operation of vehicle could be inferred from fact that he was found strapped into driver's seat by his seat belt, plaintiff admitted to police that he had been arrested one year prior for operating motor vehicle while intoxicated, plaintiff had nervous demeanor, which demonstrated consciousness of guilt, and plaintiff's attorney stated that plaintiff lost his eyeglasses during accident), cert. denied, 229 Conn. 909, 642 A.2d 1205 (1994).

officer's interest in his driver's license."), cert. denied, 215 Conn. 811, 576 A.2d 542 (1990).

Furthermore, "[i]t is axiomatic under Connecticut law that, while a [trier of fact] may reject a defendant's testimony, a [trier of fact] in rejecting such testimony cannot conclude that the opposite is true. . . . Thus, under Connecticut law, the [trier of fact] is not permitted to infer, from its disbelief of the defendant's testimony, that any of the facts which he denied were true." (Internal quotation marks omitted.) *State* v. *McCarthy*, 105 Conn. App. 596, 619, 939 A.2d 1195, cert. denied, 286 Conn. 913, 944 A.2d 983 (2008); see also *State* v. *Stovall*, 316 Conn. 514, 524, 115 A.3d 1071 (2015) ("[t]he jury was free to disbelieve [witness'] testimony [that she had never seen the defendant sell drugs in the witness' apartment], but such disbelief could not provide an adequate evidentiary basis for the opposite finding that the defendant intended to sell narcotics in [the witness'] apartment"). As a result, even though the jury was free to disbelieve Pawlina's testimony that he was operating the Caravan with the defendant as a passenger when the steering of the Caravan malfunctioned and the vehicle hit the curb, in rejecting that testimony it could not infer that the opposite was true.

"[A]lthough we do not sit as the seventh juror when we review the sufficiency of the evidence . . . we also must be faithful to the constitutional requirement that no person be convicted unless the [g]overnment has proven guilt beyond a reasonable doubt [and] take seriously our obligation to assess the record to determine . . . whether a jury could reasonably find guilt beyond a reasonable doubt." (Citation omitted; emphasis omitted; internal quotation marks omitted.) *State* v. *Dawson*, supra, 340 Conn. 150; see also *State* v. *Glass*, 214 Conn. App. 132, 164, 279 A.3d 203 (2022) ("[a]lthough we must not substitute our judgment for that of the jury, a reviewing court must determine whether the jury reasonably could have concluded as it did" (internal quotation marks omitted)). In the present case, the cumulative force of the state's

evidence, viewed in the light most favorable to sustaining the verdict, was insufficient to establish beyond a reasonable doubt the defendant's operation of a motor vehicle. Consequently, the defendant's conviction of operating a motor vehicle while having an elevated blood alcohol content and evasion of responsibility in the operation of a motor vehicle cannot stand.[17]

The judgment is reversed only as to the defendant's conviction of operating a motor vehicle while having an elevated blood alcohol content and evasion of responsibility in the operation of a motor vehicle and the case is remanded with direction to render a judgment of acquittal as to those charges and for resentencing; the judgment is affirmed in all other respects.

In this opinion the other judges concurred.

---

[17] On appeal, the defendant also claims that the evidence was insufficient to establish that (1) he had an elevated blood alcohol content at the time of his alleged operation of the Caravan, which is an element of the crime of operation of a motor vehicle while having an elevated blood alcohol content, and (2) he was involved in an accident that caused damage to property; see General Statutes § 14-224 (b) (3); which is an element of the crime of evasion of responsibility in the operation of a motor vehicle. In light of our conclusion that the evidence presented by the state was insufficient to prove that the defendant operated a motor vehicle—an essential element of both operating a motor vehicle while having an elevated blood alcohol content and evasion of responsibility in the operation of a motor vehicle—we need not address the defendant's other claims challenging the sufficiency of the evidence to support his conviction of those crimes. See, e.g., *State* v. *Lewis*, 303 Conn. 760, 763 n.1, 36 A.3d 670 (2012) (because court determined that state failed to provide sufficient evidence of defendant's intent to sell narcotics in prosecution of charge of possession of narcotics with intent to sell within 1500 feet of school, it was unnecessary to address whether record contained sufficient evidence of additional element that school was elementary or secondary school).

We also need not address the defendant's claim that the court abused its discretion in permitting the state to elicit evidence from Krzykowski concerning her familiarity with the possible negative consequences that could occur if a holder of a commercial driver's license is arrested for operating a motor vehicle while having an elevated blood alcohol content. In his principal appellate brief, the defendant contends that this testimonial evidence is not relevant, as it "did not have a tendency

to prove that [he] operated a motor vehicle while under the influence or that he operated a motor vehicle and knowing[ly] was involved in an accident that caused injury or property damage to another and failed to report it." He raises this claim, therefore, only with respect to his conviction of operating a motor vehicle while having an elevated blood alcohol content and evasion of responsibility in the operation of a motor vehicle, and not as to his conviction of interfering with an officer. Accordingly, in light of our determination that the element of operation has not been proven, which is dispositive of the defendant's conviction of operating a motor vehicle while having an elevated blood alcohol content and evasion of responsibility in the operation of a motor vehicle, we need not address this claim.