******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

## STATE OF CONNECTICUT *v.* ERVIN B.*
## (AC 41482)

Alvord, Prescott and DiPentima, Js.

*Syllabus*

Convicted of the crime of threatening in the second degree, the defendant appealed to this court. The defendant allegedly was involved in a domestic disturbance during which he stabbed his wife in the leg. Over the defendant's objection, the trial court admitted portions of his wife's hearsay statement to a police officer that the defendant "was gonna continue to hurt her more." Neither the defendant nor his wife testified at trial. The defendant claimed that the evidence was insufficient to support a finding that he made a physical threat to his wife, a necessary element of threatening in the second degree in violation of statute (§ 53a-62 (a) (1)). *Held* that the evidence was not sufficient to support the defendant's conviction of threatening in the second degree in violation of § 53a-62 (a) (1), there having been insufficient evidence to support the conclusion beyond a reasonable doubt that the defendant made a physical threat to his wife: the state presented no direct evidence to the jury that the defendant had threatened his wife, either through words or some nonverbal expression, with imminent future harm; moreover, the state's argument that the jury reasonably could have inferred a threat from other evidence was unavailing, as the fact that evidence existed from which the jury could have concluded that the defendant had recently assaulted his wife, without more, was insufficient to support an inference that he necessarily made a threat of future violence, his wife's statement that he "was gonna continue to hurt her more" did not connect her subjective fear of future harm to any particular act, expression or communication by the defendant, nor was there evidence that she complained of a threat, that other people heard threatening words or observed threatening behavior, or that the police inquired about a potential threat; furthermore, the jury was not permitted to speculate that a threat had been made solely on the basis of her assertion of fear, and, assuming the jury was permitted to consider the defendant's silence during his wife's statement as an evidentiary admission that he had stabbed her, this could not be viewed as an admission of a threat or have more effect than acknowledging her subjective fear.

Argued September 16—officially released December 22, 2020

*Procedural History*

Information charging the defendant with the crimes of assault in the first degree and threatening in the second degree, brought to the Superior Court in the judicial district of Fairfield, geographical area number two, and tried to the jury before *Kavanewsky, J.*; thereafter, the court denied the defendant's motion for a judgment of acquittal; verdict and judgment of guilty of threatening in the second degree, from which the defendant appealed to this court. *Reversed*; *judgment directed.*

*Emily H. Wagner*, assistant public defender, for the appellant (defendant).

*Brett R. Aiello*, deputy assistant state's attorney, with whom, on the brief, were *John C. Smriga*, state's attorney, and *Joseph J. Harry*, senior assistant state's attorney, for the appellee (state).

*Opinion*

PRESCOTT, J. The defendant, Ervin B., appeals from the judgment of conviction, rendered following a jury trial, of threatening in the second degree in violation of General Statutes § 53a-62 (a) (1). The defendant claims on appeal that the evidence was insufficient to prove beyond a reasonable doubt that he was guilty of threatening in the second degree. We agree with the defendant's insufficiency of the evidence claim and therefore remand the case to the trial court with direction to render a judgment of acquittal.[1]

The following procedural history and evidence presented at trial is relevant to the defendant's insufficiency claim. The defendant is married to the complaining witness, Wanda. On February 13, 2016, at approximately 3:40 a.m., Officer Christopher Smith was dispatched to the defendant's and Wanda's apartment building in Bridgeport to respond to a report of a domestic disturbance. Smith met the defendant at the front door of the building, and he then accompanied Smith to apartment number eight. Smith found Wanda standing on the second floor landing outside of the apartment and bleeding from a stab wound to her right thigh. Wanda was upset and crying, and she appeared to be in pain. Smith quickly called for medical assistance and for the assistance of a Spanish speaking officer because Wanda speaks only Spanish.

Officer Ariel Martinez arrived at the apartment shortly thereafter and began to speak to Wanda in Spanish. Martinez asked Wanda what had happened. Wanda stated that she had come home from a night out and the defendant stabbed her.[2] She also stated that the defendant "was gonna continue to hurt her more." The defendant, who was standing nearby, did not respond to Wanda's accusation that he had stabbed her. At the end of this conversation, the defendant was arrested and transported to the Bridgeport police station. He subsequently was charged with assault in the first degree in violation of General Statutes § 53a-59 (a) (1) and threatening in the second degree in violation of § 53a-62 (a) (1).

Wanda was transported to a hospital for medical care. She received treatment for a serious laceration to her leg from a sharp object, and six staples were required to close the wound.[3]

Wanda did not testify at trial, and a portion of her hearsay statement to Martinez was admitted over the defendant's objection as an excited utterance. Following the conclusion of the state's case, the defendant made a motion for a judgment of acquittal on the ground that the evidence presented by the state was insufficient to prove beyond a reasonable doubt that the defendant had committed assault in the first degree or threatening in the second degree. The court denied the motion in

its entirety.[4]

The jury subsequently found the defendant not guilty of assault in the first degree and guilty of threatening in the second degree. The court sentenced the defendant on the conviction of threatening in the second degree to one year of incarceration, suspended after four months, and two years of probation. This appeal followed.

The defendant claims on appeal that his conviction of threatening in the second degree must be reversed because the state failed to present sufficient evidence to prove beyond a reasonable doubt each element of the crime. Specifically, the defendant argues that the hearsay statement of Wanda relied on by the state to establish the existence of a threat only conveyed Wanda's subjective belief that the defendant would harm her in the future, and not that any actual threat of harm was made by the defendant or that he intended to place Wanda in fear of imminent physical injury.[5] The state argues that the jury reasonably could have inferred that a threat was made, and advances three evidentiary bases in the record supporting such an inference: (1) the defendant stabbed Wanda; (2) Wanda stated that the defendant was going to "continue to hurt her more"; and (3) the defendant, who was present when Wanda made that statement and identified him as her assailant, offered no denial or explanation. We agree with the defendant that there was insufficient evidence of a threat.

"The standard of review we apply to a claim of insufficient evidence is well established. In reviewing the sufficiency of the evidence to support a criminal conviction we apply a [two part] test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [finder of fact] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . .

"We note that the jury must find every element proven beyond a reasonable doubt in order to find the defendant guilty of the charged offense, [but] each of the basic and inferred facts underlying those conclusions need not be proved beyond a reasonable doubt. . . . If it is reasonable and logical for the jury to conclude that a basic fact or an inferred fact is true, the jury is permitted to consider the fact proven and may consider it in combination with other proven facts in determining whether the cumulative effect of all the evidence proves the defendant guilty of all the elements of the crime charged beyond a reasonable doubt. . . .

"Because [t]he only kind of an inference recognized by the law is a reasonable one [however] . . . any such inference cannot be based on possibilities, surmise or

conjecture. . . . It is axiomatic, therefore, that [a]ny [inference] drawn must be rational and founded upon the evidence. . . . [T]he line between permissible inference and impermissible speculation is not always easy to discern. When we infer, we derive a conclusion from proven facts because such considerations as experience, or history, or science have demonstrated that there is a likely correlation between those facts and the conclusion. If that correlation is sufficiently compelling, the inference is reasonable. But if the correlation between the facts and the conclusion is slight, or if a different conclusion is more closely correlated with the facts than the chosen conclusion, the inference is less reasonable. At some point, the link between the facts and the conclusion becomes so tenuous that we call it speculation. When that point is reached is, frankly, a matter of judgment. . . .

"Moreover, it does not diminish the probative force of the evidence that it consists, in whole or in part, of evidence that is circumstantial rather than direct. . . . It is not one fact, but the cumulative impact of a multitude of facts which establishes guilt in a case involving substantial circumstantial evidence. . . . In evaluating evidence, the [finder] of fact is not required to accept as dispositive those inferences that are consistent with the defendant's innocence. . . . The [finder of fact] may draw whatever inferences from the evidence or facts established by the evidence it deems to be reasonable and logical. . . .

"[A]s we have often noted, proof beyond a reasonable doubt does not mean proof beyond all possible doubt . . . nor does proof beyond a reasonable doubt require acceptance of every hypothesis of innocence posed by the defendant that, had it been found credible by the [finder of fact], would have resulted in an acquittal. . . . On appeal, we do not ask whether there is a reasonable view of the evidence that would support a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that supports the [finder of fact's] verdict of guilty. . . .

"Finally, [w]e . . . emphasize the weighty burden imposed on the state by the standard of proof beyond a reasonable doubt. Under bedrock principles of our criminal justice system, it is obviously not sufficient for the state to prove simply that it is more likely than not that the defendant [committed the offense], or even that the evidence is clear and convincing that he [committed the offense]. . . . Our Supreme Court has described the beyond a reasonable doubt standard as a subjective state of near certitude . . . ." (Citations omitted; internal quotation marks omitted.) *State* v. *Gray-Brown*, 188 Conn. App. 446, 464–66, 204 A.3d 1161, cert. denied, 331 Conn. 922, 205 A.3d 568 (2019).

Section 53a-62 provides in relevant part: "(a) A person is guilty of threatening in the second degree when: (1)

By physical threat, such person intentionally places or attempts to place another person in fear of imminent serious physical injury . . . .” The state in its amended information dated October 11, 2017, charged the defendant with threatening in the second degree in violation of § 53a-62 (a) (1) in that, “by physical threat, [he] intentionally placed or attempted to place one [Wanda] in fear of imminent physical injury . . . .” Thus, the state was obligated to prove beyond a reasonable doubt the following elements of this offense: (1) the defendant made a physical threat to Wanda, and (2) he specifically intended by his conduct to put Wanda in fear of imminent serious physical injury. See *State* v. *Ramirez*, 107 Conn. App. 51, 65, 943 A.2d 1138 (2008), aff'd, 292 Conn. 586, 973 A.2d 1251 (2009); see also *State* v. *Kantorowski*, 144 Conn. App. 477, 488, 72 A.3d 1228, cert. denied, 310 Conn. 924, 77 A.3d 141 (2013) (threatening in second degree is specific intent crime). The defendant challenges, inter alia, the sufficiency of the evidence as it relates to the first element, that is, whether the defendant through his conduct or words made a physical threat to Wanda.

Our Supreme Court has stated that “a threat, by definition, is an *expression* of an intent to cause some future harm.” (Emphasis added.) *State* v. *Cook*, 287 Conn. 237, 257, 947 A.2d 307, cert. denied, 555 U.S. 970, 129 S. Ct. 464, 172 L. Ed. 2d 328 (2008). This is consistent with the dictionary definition of a threat as “[a] *communicated* intent to inflict harm or loss on another . . . .” (Emphasis added.) Black's Law Dictionary (11th Ed. 2019) p. 1783; see also Merriam-Webster's Collegiate Dictionary (11th Ed. 2003) p. 1302 (defining threat as “*expression of intention* to inflict evil, injury, or damage” (emphasis added)). In naming the offense at issue “threatening,” the legislature used an active verb that describes the actions of the perpetrator. It follows, therefore, that a conviction for threatening requires proof of some action by the defendant, whether by word or gesture, that expresses or implies the future infliction of harm.

Our review of the record shows that the state presented no direct evidence to the jury that the defendant had threatened Wanda, either through words or some nonverbal expression, with imminent future harm. Wanda was not called to testify at trial, and, thus, the jury never heard from her directly whether the defendant had conveyed an overt or implied threat to her. No other witness testified that they heard or observed the defendant, through word or deed, express an intent to hurt Wanda in the future. The state directs us to no such evidence in the record. Instead, as previously indicated, the state argues that the jury reasonably could have inferred from other evidence presented that the defendant made a threat, and it identifies three potential evidentiary sources as supporting such an inference.

First, the state argues that evidence was presented that the defendant had stabbed Wanda. The mere fact that evidence existed from which the jury could have concluded that the defendant recently had assaulted Wanda, however, is not probative of any intent to cause future harm and cannot, without more, be held sufficient to support an inference that he necessarily made a threat of additional violence in the future. If we were to agree with such a position, any assault or domestic altercation in which a victim later expressed to the police some fear of future harm by the perpetrator would, in the state's view, support not only a charge of threatening but ultimately a conviction, regardless of whether there was any independent evidence of a threat actually having been made. Such an obviously unjustifiable outcome demonstrates why drawing the inference that the state advances would depart from the realm of reasonable inferences that a jury permissibly may draw into pure speculation that cannot be a permissible basis for a criminal conviction.

Second, the state argues that the jury could have made a reasonable inference that the defendant had made a threat to Wanda on the basis of Martinez' trial testimony, in which he described what Wanda had told him during the investigation of the stabbing incident.[6] Specifically, the state directs us to the following colloquy between the prosecutor and Martinez:

"Q. [D]id you ask [Wanda], at the request of Officer Smith, what happened?

"A: Yes.

"Q. And what did—did she respond?

"A. Yes.

"Q. What did she say?

"A. She said, she came home from a night out into the apartment and she was stabbed.

"Q. Okay. And when she came home, she was stabbed. Did she say anything more?

"A: Yes. She said that *he was gonna continue to hurt her more.*" (Emphasis added.)

According to the state, the jury reasonably could have inferred on the basis of Wanda's statement to Martinez that the defendant "was gonna continue to hurt her more," that the defendant had in fact threatened her with imminent physical injury.

In our view, Wanda's statement to Martinez could constitute evidence from which the jury reasonably could have inferred that the defendant previously had hurt her[7] and that she believed that he likely would hurt her again in the future. Nothing in her statement to Martinez, however, connected Wanda's subjective fear that the defendant would harm her again to any particu-

lar act, expression, or communication by the defendant from which the jury could have inferred the factual predicate for that fear. Nothing in the officers' testimony suggested that Wanda had complained that the defendant had made a threat to her, that the officers or responding medical personnel had heard threatening words or observed threatening behavior, or even that the police had inquired about a potential threat. We do not find any such evidence from our review of the evidentiary record before us. Rather than resulting from any specific threat, Wanda's statement that the defendant "was gonna continue to hurt her more" reflected at most her fear that, because he previously had hurt her, he likely would do so again.

As demonstrated by our Supreme Court's recent decision in *State* v. *Rhodes*, 335 Conn. 226,      A.3d (2020), the "line between permissible inference and impermissible speculation is not always easy to discern." (Internal quotation marks omitted.) Id., 238. "When we infer, we derive a conclusion *from proven facts* because such considerations as experience, or history, or science have demonstrated that there is a likely correlation between those facts and the conclusion. . . . [I]f the correlation between the facts and the conclusion is slight, or if a different conclusion is more closely correlated with the facts than the chosen conclusion, the inference is less reasonable. At some point, the link between the facts and the conclusion becomes so tenuous that we call it speculation." (Emphasis added; internal quotation marks omitted.) Id.

In the present case, there were no facts of any kind from which the jury could have inferred threatening words or conduct toward Wanda independent of the alleged assault. In other words, there were no facts from which the jury could have inferred that the defendant actively had engaged in threatening. No factual basis was offered to explain Wanda's general statement of fear that the defendant would hurt her again. In deciding whether the state had met its burden of proving beyond a reasonable doubt that a threat was made by the defendant, the jury was not permitted to guess at possibilities or speculate that a threat was made solely on the basis of Wanda's assertion of her fear of the defendant.

Finally, the state claims that the jury reasonably could have drawn an inference of a threat from the fact that, when Wanda gave her statement to Martinez, the defendant was standing close enough to have overheard her statement, but he chose to remain silent, neither disputing Wanda's statement nor offering any explanation. The state cites to *State* v. *Leecan*, 198 Conn. 517, 504 A.2d 480, cert. denied, 476 U.S. 1184, 106 S. Ct. 2922, 91 L. Ed. 2d 550 (1986), for the proposition that "[w]hen a statement, accusatory in nature, made in the presence and hearing of an accused, is not denied or explained

by him, it may be received into evidence as an admission on his part." (Internal quotation marks omitted.) Id., 522. The decision in *Leecan*, however, additionally states: "The circumstances, of course, must be such that a reply would naturally be called for even in the prearrest setting. . . . Although evidence of silence in the face of an accusation may be admissible under the ancient maxim that silence gives consent the inference of assent may be made only when no other explanation is consistent with silence." (Citation omitted; internal quotation marks omitted.) Id., 522–23.

In the present case, Martinez testified that the defendant was present and close enough to have overheard Wanda's statements to him. According to Martinez, the defendant made no denials regarding her statements, which included both Wanda's identification of the defendant as her attacker and her statement that the defendant "was gonna continue to hurt her more."[8] Even assuming the jury was permitted to consider the defendant's silence as an evidentiary admission that he was the person who stabbed Wanda, for the reasons previously discussed, it would have been unreasonable for the jury to infer solely from the fact that an assault had occurred that the defendant also made a physical threat of future harm to Wanda. Furthermore, Wanda's statement that the defendant would hurt her more contained no accusation that the defendant, either implicitly or expressly, had conveyed a threat of future harm. Accordingly, even assuming the defendant's silence was an admission, it only could have had the effect of acknowledging Wanda's subjective fear. It cannot be viewed as an admission of a threat. As we already have discussed, it would be nothing more than impermissible speculation to infer that Wanda's fear was the result of any specific threat by the defendant rather than simply the circumstances of the parties' relationship.

We conclude that there was insufficient evidence for the jury to have concluded beyond a reasonable doubt that the defendant made a physical threat to Wanda. Accordingly, his conviction of threatening in the second degree in violation of § 53a-62 (a) (1) cannot stand.

The judgment is reversed and the case is remanded with direction to render judgment of acquittal.

In this opinion the other judges concurred.

* In accordance with our policy of protecting the privacy interest of the victims of domestic violence, we decline to identify the defendant, the victim, or others through whom the victim's identity may be ascertained. See General Statutes § 54-86e.

[1] The defendant also claims on appeal that the trial court (1) abused its discretion by admitting, pursuant to the excited utterance exception to the hearsay rule, a statement by the complaining witness, (2) violated his constitutional right to confrontation by admitting that statement, (3) improperly excluded a prior inconsistent statement of the complaining witness, and (4) violated his sixth amendment right to counsel by prohibiting defense counsel during closing argument from commenting on the fact that the state's complaining witness did not testify at trial. Because we agree with the defendant's insufficiency of the evidence claim and order a judgment of acquittal, it is unnecessary to reach the defendant's other claims on appeal.

[2] Although neither Smith nor Martinez testified directly regarding the manner in which Wanda identified the defendant as her assailant, they nonetheless testified that she had provided them with that information at the time they responded to the incident. Moreover, the jury heard Wanda's hearsay statement to Martinez that the defendant was "gonna continue to hurt her more." From that statement and the fact that the defendant was taken into custody following her identification, the jury could have inferred that Wanda accused the defendant by name.

[3] At trial, the court excluded statements attributed to Wanda in her medical records that identified the defendant as the person who stabbed her.

[4] The defendant did not testify at trial and presented no evidence during his case-in-chief.

[5] The defendant's brief is not a model of clarity in identifying which of the elements of threatening in the second degree he challenges in his insufficiency claim. Read as a whole, however, there is no doubt that the defendant's analysis argues that the state offered insufficient evidence of an actual threat, and the state responded to that argument in its brief and at oral argument before this court.

[6] As indicated in footnote 1 of this opinion, the defendant challenges the propriety of the court's admission of the Wanda's statement under the excited utterance exception to the hearsay rule. In assessing the sufficiency of the evidence, however, we consider *all* evidence admitted at trial. See *State v. Chemlen*, 165 Conn. App. 791, 818, 140 A.3d 347 ("[c]laims of evidentiary insufficiency in criminal cases are always addressed independently of claims of evidentiary error" (internal quotation marks omitted)), cert. denied, 322 Conn. 908, 140 A.3d 977 (2016).

[7] Logically, the statement that Wanda believed he would "*continue* to hurt her *more*," if credited, reasonably implies that he had hurt her in the past.

[8] Although for purposes of this analysis we must assume the jury accepted the state's offer of the defendant's silence as an admission, it may have been reasonable for the defendant to have stayed silent in this situation because he was not being addressed by the police, he was not part of the conversation, and, had he interrupted to defend his innocence, it might have been perceived as aggressive or escalating an already de-escalated situation.