******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# STATE OF CONNECTICUT *v.* EDWIN FRANQUI (SC 21014)

Mullins, C. J., and McDonald, D'Auria, Ecker,
Alexander, Dannehy and Bright, Js.

*Syllabus*

Convicted of conspiracy to commit murder, accessory to murder, and accessory to assault in the first degree in connection with the shooting of the victim and another person, the defendant appealed to this court. Two individuals in an Infiniti had approached the vehicle that the victim was driving, and the passenger in the Infiniti shot and killed the victim, which caused the victim's vehicle to crash. At the scene of the crash, O, who was the victim's girlfriend and one of the passengers in his vehicle, immediately identified the perpetrators to a responding police officer as the defendant and his elder brother, E. Later that day, O submitted a signed, written statement to the police in which she identified the defendant as the driver of the Infiniti and E as the passenger who fired the shots that caused the victim's death. The following day, E admitted to J, his other brother, that E had killed the victim. At trial, O identified E as the shooter sitting in the passenger seat of the Infiniti but testified that she was not sure that the defendant was the driver. The prosecutor then introduced O's written statement that the defendant was the driver as a prior inconsistent statement for substantive purposes under *State* v. *Whelan* (200 Conn. 743) and the Connecticut Code of Evidence (§ 8-5 (1)). On appeal, the defendant claimed, inter alia, that his conviction violated his constitutional right to due process because it was based solely on O's uncorroborated, prior inconsistent statement identifying him as the driver of the Infiniti from which E shot and killed the victim. *Held*:

The defendant could not prevail on his unpreserved claim that this court should overrule *Whelan* on the ground that the admission of prior inconsistent statements for substantive purposes violates principles of due process because of the unreliability of such statements.

The defendant's conclusory legal arguments were insufficient to establish that *Whelan*'s rejection of arguments challenging the ability of jurors to assess the truthfulness of a prior inconsistent out-of-court statement was incorrect when that case was decided or that *Whelan* should otherwise be overruled on constitutional grounds, and, accordingly, the defendant's claim failed under the third prong of *State* v. *Golding* (213 Conn. 233).

This court declined the defendant's request to overrule *State* v. *Newsome* (238 Conn. 588), which allows an uncorroborated *Whelan* statement to comprise the sole evidentiary basis for a conviction under certain circumstances, as that particular holding in *Newsome* was inapplicable to the defendant's case because O's prior inconsistent statement identifying the defendant as the driver of the Infiniti was corroborated by other evidence and, therefore, was not the sole evidence of the defendant's guilt.

This court declined the defendant's request to exercise its supervisory authority over the administration of justice to abrogate the hearsay exception for

spontaneous utterances because, even if the defendant were correct that the broader spontaneous utterance exception has a flawed doctrinal basis, the existing law governing this hearsay exception would have accommodated the defendant's challenge at trial to the admissibility of O's statement that she had made to a police officer identifying the defendant as one of the perpetrators.

The defendant could not prevail on his claim that, because the state had failed to present sufficient evidence that he was the driver of the Infiniti from which the shooting occurred, the jury could not reasonably have found him guilty of the charged offenses, as the evidence was sufficient to support the jury's guilty verdict.

Argued December 4, 2025—officially released April 21, 2026

*Procedural History*

Substitute information charging the defendant with the crimes of conspiracy to commit murder, accessory to murder and accessory to assault in the first degree with a firearm, brought to the Superior Court in the judicial district of Hartford, where the case was tried to the jury before *Gustafson, J.*; verdict and judgment of guilty, from which the defendant appealed to this court. *Affirmed*.

*Cameron L. Atkinson*, for the appellant (defendant).

*Laurie N. Feldman*, assistant state's attorney, with whom were *Sharmese L. Walcott*, state's attorney, *Michael W. Riley*, supervisory assistant state's attorney, and *Casey Flynn*, assistant state's attorney, for the appellee (state).

*Opinion*

McDONALD, J. A jury found that the defendant, Edwin Franqui, drove the car from which his brother shot and killed Junny Lara-Velazquez on Capitol Avenue in Hartford. The defendant now appeals from the judgment of conviction, rendered after a jury trial, of conspiracy to commit murder in violation of General Statutes §§ 53a-54a (a) and 53a-48, accessory to murder in violation of § 53a-54a (a) and General Statutes § 53a-8, and accessory to assault in the first degree with a firearm in violation of General Statutes § 53a-59 (a) (5) and § 53a-8. The

defendant challenges his conviction on four grounds. He primarily claims that the evidence was not sufficient to establish that he was the driver of the car from which the murder was committed. Second, he claims that the conviction violated his federal right to due process because it was based solely on an uncorroborated prior inconsistent out-of-court statement, identifying him as the driver of the car, which was admitted into evidence pursuant to *State* v. *Whelan*, 200 Conn. 743, 753, 513 A.2d 86, cert. denied, 479 U.S. 994, 107 S. Ct. 597, 93 L. Ed. 2d 598 (1986). The defendant also contends that we should (1) overrule the *Whelan* doctrine, and (2) exercise our supervisory authority to abrogate the "excited utterance" exception to the rule against hearsay. We disagree with these claims and affirm the judgment of conviction.

The jury reasonably could have found the following facts. Shortly after midnight, on July 6, 2020, the victim was involved in an altercation at a gathering on Wolcott Street in Hartford, in which he attempted to hit a woman who had thrown fireworks[1] at him. The defendant and his older brother, who is also named Edwin Franqui (elder Franqui), stopped the victim from hitting the woman. The defendant tried to grab the victim's neck, wounding it in the process. The elder Franqui told the victim that he was a "dead man," after which the defendant and the elder Franqui aggressively invaded the victim's personal space. A physical altercation ensued as the men wrestled for control over a gun that belonged to the elder Franqui. After the elder Franqui took control of the gun, he told the victim to leave.

At some point after the victim left, he called someone in the Franqui brothers' group, threatening to "light it up," i.e., shoot at the group. The elder Franqui also called the victim to threaten him. Subsequently, two cars approached the Franqui brothers' group on Wolcott Street. The victim was in one car, while someone in the other car shot at the group, striking the girlfriend of

---

[1] Although the thrown items are most frequently referred to as "fireworks," there is some evidence in the record indicating that the items may have been firecrackers.

another Franqui brother, Johanny Franqui, in her neck. Also at some point after the victim left the gathering, his housemate called him, claiming that the defendant and the elder Franqui had entered his house and had threatened to kill him.

Later that morning, the three Franqui brothers met at the back of a house on Wolcott Street. During the meeting, the elder Franqui said that he was going to kill the victim. The defendant left this meeting together with the elder Franqui. The shooting that led to the defendant's conviction took place approximately one hour after the Franqui brothers left that meeting, as the victim was driving his Honda Accord westbound on Capitol Avenue, in the direction of Prospect Avenue. The victim's sixteen year old girlfriend, Dayzani Ortiz, was in the passenger seat of the Honda, and Ortiz' friend, Delymar Rios, was in the back seat. Ortiz saw a tan Infiniti that was two cars behind them. She recognized the car as belonging to the defendant and the elder Franqui because, about one week earlier, the victim had sold it to them after tinting the windshield in a distinctive manner that was familiar to Ortiz. Ortiz noticed that the Infiniti was swerving in traffic. The victim began to pull over to the side of the road to allow the car between the Honda and the Infiniti to pass him. The Infiniti then entered the eastbound lane and pulled up next to the Honda.

The elder Franqui, who was sitting in the passenger seat of the Infiniti, began shooting at the Honda. The victim and his passengers ducked to avoid being shot but were unsuccessful. After Rios, who was in the back seat, exclaimed that she had been shot, the victim reacted by raising his head, at which time the elder Franqui shot him in the head, fatally wounding him. Although Ortiz grabbed the steering wheel to take control of the Honda, the victim's foot remained stuck on the gas pedal, and the Honda crossed over Prospect Avenue, ultimately crashing into a Subway restaurant on Boulevard in West Hartford.

At the scene of the crash, Ortiz immediately identified the perpetrators to responding police officers as the defendant and the elder Franqui, who were driving the Infiniti on Capitol Avenue. Later that day, after being treated in the hospital, Ortiz completed and signed a written statement in which she identified the defendant as the driver of the Infiniti and the elder Franqui as the passenger who fired the shots that killed the victim and injured Rios.

Johanny Franqui, the third Franqui brother, learned from a Facebook post later that day that the victim's Honda had crashed into a building and that the victim had been shot and killed. That night, the elder Franqui called Johanny Franqui and told him that he was not going to be around for some time. The following day, the elder Franqui admitted to Johanny Franqui that he had killed the victim.

The state charged the defendant with conspiracy to commit murder, accessory to murder, and accessory to first degree assault with a firearm. The trial court joined the defendant's case with the elder Franqui's case for trial. The case was tried to a jury, which found the defendant guilty on all counts. The trial court rendered a judgment of conviction in accordance with the jury's verdict and sentenced the defendant to a total effective sentence of fifty years of imprisonment. The defendant now appeals directly to this court. See General Statutes § 51-199 (b) (3).

I

We first address the defendant's claim that we should overrule *State* v. *Whelan*, supra, 200 Conn. 743, because, as he contends in his brief, "admitting prior inconsistent statements [for their substantive use] violates the fourteenth amendment's due process clause" by virtue of their unreliability.[2] For this reason, the defendant

[2] We do not address the claims in the order presented in the defendant's brief because it is somewhat unclear at times whether his sufficiency of the evidence analysis, which is the first claim presented, is grounded in

argues that the admission of Ortiz' *Whelan* statement identifying him as the driver of the Infiniti violated his right to due process.[3] The state responds that this claim is evidentiary in nature and that the defendant waived it in the trial court. In the alternative, the state argues that stare decisis requires adherence to *Whelan*.

The following additional facts and procedural history are relevant to our resolution of the defendant's claim that the admission of Ortiz' *Whelan* statement violated his right to due process. At trial, Ortiz identified the elder Franqui as the shooter sitting in the passenger seat of the Infiniti, but she did not identify the driver by name. She testified that the driver and the defendant both had long hair, but she could not say whether the defendant was the driver. The prosecutor then sought to introduce Ortiz' written statement from the day of the shooting, which identified the defendant as the driver and the elder Franqui as the passenger and the shooter. Because Ortiz signed this written statement, had personal knowledge of the facts, testified at trial, and was subject to cross-examination, the trial court admitted her prior inconsistent statement as substantive evidence pursuant to *State* v. *Whelan*, supra, 200 Conn. 753. See Conn. Code Evid. §8-5 (1). Defense counsel raised no objection, evidentiary or otherwise, at trial.

The defendant concedes that he did not preserve this constitutional claim and seeks review under *State* v.

all of the admitted evidence viewed collectively, as is the usual course for analyzing sufficiency claims. See, e.*g.*, *State* v. *Robles*, 348 Conn. 1, 29–30, 301 A.3d 498 (2023). We also understand the defendant's claims to attack the sufficiency of the evidence in the absence of the *Whelan* statements and excited utterances that he attacks substantively, with some of those claims grounded in concepts of sufficiency rather than harmless error. See, e.*g.*, *State* v. *Newsome*, 238 Conn. 588, 603, 682 A.2d 972 (1996). For the purpose of clarity, we address the defendant's sufficiency claims last in this opinion, after we analyze his substantive challenges to the evidence underlying his conviction.

[3] The defendant does not appear to claim that the admission of Johanny Franqui's *Whelan* statement, which establishes that the elder Franqui had admitted to killing the victim, violated the defendant's right to due process, even though he challenges the constitutionality of *Whelan* statements generally.

*Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), as modified by *In re Yasiel R.*, 317 Conn. 773, 781, 120 A.3d 1188 (2015). It is well settled that "a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: **(1)** the record is adequate to review the alleged claim of error; **(2)** the claim is of constitutional magnitude alleging the violation of a fundamental right; **(3)** the alleged constitutional violation . . . exists and . . . deprived the defendant of a fair trial; and **(4)** if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Emphasis in original; internal quotation marks omitted.) *State* v. *Holley*, 327 Conn. 576, 590 n.8, 175 A.3d 514 (2018); see *State* v. *Golding*, supra, 239–40; see also *In re Yasiel R.*, supra, 781 (modifying third prong of *Golding*).

"We do not lightly overrule our existing precedent. This court repeatedly has acknowledged that because the doctrine of [s]tare decisis, although not an end in itself, serves the important function of preserving stability and certainty in the law . . . a court should not overrule its earlier decisions unless the most cogent reasons and inescapable logic require it. . . . Stare decisis is justified because it allows for predictability in the ordering of conduct, it promotes the necessary perception that the law is relatively unchanging, it saves resources and it promotes judicial efficiency. . . . It is the most important application of a theory of decisionmaking consistency in our legal culture and . . . is an obvious manifestation of the notion that decisionmaking consistency itself has normative value." (Citations omitted; internal quotation marks omitted.) *State* v. *Lockhart*, 298 Conn. 537, 549, 4 A.3d 1176 (2010). "Stare decisis principles require a clear showing that an established rule is incorrect and harmful before it is abandoned . . . . A claimant must demonstrate not merely the preferability of a different rule but provide reasons that are so inescapable as to compel this court to overrule precedent." (Citation omitted; internal quotation marks omitted.) *State* v. *Haynes*, 352 Conn. 236, 245, 336 A.3d 1139 (2025).

We have previously explained our holding in *Whelan* and contextualized its departure from the rule that it replaced. "In *State* v. *Whelan*, supra, 200 Conn. [753], we held that the substantive use of a prior written inconsistent statement is permitted, provided that the statement has been signed by the declarant, who has personal knowledge of the facts stated, when the declarant testifies at trial and is subject to cross-examination. . . . This rule has been codified at §8-5 [1] of the Connecticut Code of Evidence. It is well settled that changes in position, denial[s] of recollection, and omissions can satisfy the inconsistency element of *Whelan*. . . . For a prior inconsistent statement to be admitted under *Whelan* and §8-5 [1], however, the declarant must be available to testify at trial and be subject to cross-examination." (Citations omitted; footnote omitted; internal quotation marks omitted.) *State* v. *Jacques*, 353 Conn. 122, 153, 340 A.3d 1073 (2025).

The *Whelan* rule "abandoned the traditional view that a prior inconsistent statement of a nonparty witness is inadmissible hearsay if offered to prove the truth of the matters asserted therein and, therefore, is admissible only for impeachment purposes. . . . In *Whelan*, we carefully considered the rationale for the common law prohibition on the substantive use of prior inconsistent statements and the criticisms of that rule. We noted that [t]he logic of [the] orthodox rule is that the prior inconsistent statement of a witness is too unreliable to be admitted as substantive evidence because the declarant was not (1) under oath and subject to punishment for perjury, (2) in the presence of the trier of fact, or (3) subject to cross-examination. . . . We acknowledged, however, the view of many scholars and commentators that the oath is not as strong a guaranty of trustworthiness as it once may have been, and that the requirements that the jury observe the declarant and that the defendant have the opportunity to cross-examine are met when the declarant takes the stand and is subject to cross-examination. . . .

"Further, we agreed with several commentators that when the declarant is available for cross-examination the

jury has the opportunity to observe him as he repudiates or varies his former statement. The cross-examination to which a recanting witness will be subjected is likely to be meaningful because the witness will be forced either to explain the discrepancies between the earlier statements and his present testimony, or to deny that the earlier statement was made at all. If, from all that the jury sees of the witness, they conclude that what he says now is not the truth, but what he said before, they are none the less deciding from what they see and hear of that person and in court. . . . The jury can, therefore, determine whether to believe the present testimony, the prior statement, or neither. . . .

"We concluded that the prevailing reasons for refusing to allow any prior inconsistent statement to be used as substantive evidence are no longer valid . . . and that an exception to the hearsay rule was appropriate where the statements are made under conditions deemed to render them equal in reliability and trustworthiness to those made under the sanction of an oath and the test of cross-examination. . . . In this regard, however, we declined to follow the modern view favoring substantive admissibility for all prior inconsistent statements where the [declarant] is in court and subject to cross-examination, concluding that certain additional criteria of admissibility were appropriate to ensure the reliability of such statements for substantive use. . . . Noting the many hazards associated with the reporting and use of prior oral statements . . . we adopted a rule allowing the substantive use of prior written inconsistent statements, signed by the declarant, who has personal knowledge of the facts stated, when the declarant testifies at trial and is subject to cross-examination." (Citations omitted; internal quotation marks omitted.) *State* v. *Newsome*, 238 Conn. 588, 601–603, 682 A.2d 972 (1996).

Assuming that the record is adequate for review and that this claim is of a constitutional magnitude, alleging the violation of a fundamental right, we conclude that this claim fails under the third prong of *Golding* because the defendant's arguments are insufficient to

establish that *Whelan* should be overruled on constitutional grounds. Indeed, the defendant offers only conclusory legal arguments to support overruling *Whelan*. With no citation to authority to support his substantive arguments, the defendant contends that the status quo as it existed before *Whelan* was constitutionally mandated. That is, he contends that, before *Whelan* allowed the admission of certain prior inconsistent statements for substantive use, "the historical common-law rule made a deliberate choice grounded in fundamental fairness to the accused and with respect to what the state must show to rebut his presumption of innocence. . . . It was a universal commitment throughout American history to preserving the viability of the 'proof of guilt beyond a reasonable doubt' standard. . . . It was an essential part of the fundamental fairness guaranteed by the fourteenth amendment's due process clause."

The defendant accompanies this assertion with the contention, again made without citation to any authority, that the pre-*Whelan* law of evidence "recognized that jurors lacked any meaningful ability to reliably determine whether [a witness'] trial testimony or the prior inconsistent statement was true because they had no opportunity to observe the witness at the time [the witness] made the prior inconsistent statement to observe the visual indications that help a jury make credibility determinations," and that "[n]othing would be available to show whether a witness' demeanor in making the earlier statement was equally unimpressive as [the witness'] trial performance . . . ."

The defendant's conclusory, narrative characterizations of various legal doctrines do not establish that "the most cogent reasons and inescapable logic require" overruling *Whelan*, or that *Whelan*'s "established rule is incorrect and harmful . . . ." (Internal quotation marks omitted.) *State* v. *Haynes*, supra, 352 Conn. 245. Specifically, he has not established that *Whelan*'s rejection of arguments challenging jurors' ability to assess the truthfulness of a prior inconsistent statement; see *State*

v. *Newsome*, supra, 238 Conn. 601–603; is an inescapably harmful precedent—or, as he contends, that it was incorrect when decided. See *State* v. *Hinton*, 352 Conn. 183, 208, 336 A.3d 62 (2025) ("[w]e decline to overrule or modify *Newsome* because the defendant offers us no cogent reasons or inescapable logic to justify departing from our holding in that case"). Thus, we decline to overrule *Whelan* on the basis of these unsupported legal arguments and conclude that the defendant's unpreserved constitutional claim fails under the third prong of *Golding*.

## II

The defendant next claims that his conviction violated his right to due process because it was based solely on an uncorroborated *Whelan* statement, namely, Ortiz' identification of him as the driver of the Infiniti. He asks us to overrule *State* v. *Newsome*, supra, 238 Conn. 612, 616–19, which allows an uncorroborated *Whelan* statement to comprise the sole evidentiary basis for a conviction under certain circumstances. He argues that this "court should . . . reconsider *Newsome*'s refusal to adopt a corroboration requirement when the state seeks to procure a conviction based on a prior inconsistent statement regarding identification." The state responds that *Newsome*'s holding does not apply to this case because "ample evidence corroborates Ortiz' mutually corroborating out-of-court statements and supports the jury's verdict." The state also responds that *Newsome* should not be overruled.

In *Newsome*, this court considered "whether a prior inconsistent statement admitted for its substantive value pursuant to *Whelan* that constitutes the *sole* evidence identifying the accused is sufficient to support a conviction." (Emphasis added.) *State* v. *Newsome*, supra, 238 Conn. 603. The court "reject[ed] the defendant's [argument] . . . that a prior inconsistent statement that provides the sole evidence of identification is, as a matter of law, insufficient to sustain a conviction." Id., 611–12. The court instead held that "the sufficiency of a prior

inconsistent statement to support a conviction depends on its reliability, which is tested by examination of the statement itself and by the totality of the other evidence in the record, including the explanation of the witness who purportedly made the statement." Id., 616; see also *State* v. *Hinton*, supra, 352 Conn. 209 ("[m]uch like the declarant's statements in *Newsome*, [the witness'] statements to the police were reliable because they were recorded and given less than one day after the shooting").

We again assume that the record is adequate to review this claim and that the claim is of a constitutional magnitude, alleging the violation of a fundamental right. We nevertheless conclude that this unpreserved claim fails under the third prong of *Golding* because the defendant's conviction was not based solely on Ortiz' *Whelan* statement, as he contends, rendering inapplicable the holding of *Newsome* that he now challenges as unconstitutional. Our holding in *Newsome* is inapplicable to this case because there is corroboration of Ortiz' *Whelan* statement identifying the defendant as the driver of the Infiniti. See *State* v. *Hinton*, supra, 352 Conn. 209 ("contrary to the defendant's claim, [the witness'] video-recorded interviews did not constitute the only evidence the jury could have relied on"). Ortiz' excited utterance to the responding police officers at the scene of the crash provided an immediate eyewitness identification of the defendant and the elder Franqui as the perpetrators in the Infiniti during the shooting. Given that the elder Franqui admitted to Johanny Franqui that he had personally shot and killed the victim, the jury could have made a "reasonable and logical" inference; (internal quotation marks omitted) *State* v. *Brown*, 345 Conn. 354, 369, 285 A.3d 367 (2022); that the only other person identified in the Infiniti—the defendant—must have been the driver. Further, Johanny Franqui's *Whelan* statement established that he had met with the defendant and the elder Franqui the morning before the shooting and that, during this meeting, they had discussed both the events of the previous night and the elder Franqui's intention to kill the victim. The defendant and the elder Franqui then

left the meeting together approximately one hour before the shooting. Finally, Ortiz' statement was corroborated by evidence of the defendant's motive to participate in the victim's murder, including evidence of the rapidly escalating and violent feud between them, and evidence that the defendant had the opportunity and means to drive the Infiniti that he owned or co-owned with the elder Franqui. See, e.g., *State* v. *Patrick M.*, 344 Conn. 565, 598, 280 A.3d 461 (2022) ("evidence of uncharged misconduct involving the same victim is especially relevant to demonstrate motive"); see also, e.g., id., 572–73, 575–76 (evidence of defendant driving car that was near crime scene when crimes were committed reasonably supported finding that "[t]he defendant also had the opportunity and means to commit the crimes with which he was charged"). Because Ortiz' *Whelan* statement was corroborated and was not the sole evidence of the defendant's guilt, *Newsome* did not require a heightened assessment of the reliability of this statement or of the credibility of Ortiz' trial testimony.

Thus, the defendant's due process challenge to the holding of *Newsome* fails under the third prong of *Golding*. The constitutional violation that the defendant claims to have occurred in the trial court—that an uncorroborated *Whelan* statement constituted the sole evidence of his guilt—simply does not exist in this case. See, e.g., *State* v. *Holley*, supra, 327 Conn. 590 n.8.

### III

The defendant next asks us to exercise our supervisory authority over the administration of justice to abrogate the excited utterance exception to the rule against hearsay, which is codified at §8-3 (2) of the Connecticut Code of Evidence. In response, the state contends that (1) the defendant waived this claim in the trial court, (2) the record is not adequate to review this claim, and (3) the defendant has not shown a reason for this court to exercise its supervisory authority with respect to this claim.

The following additional facts and procedural history are relevant to our resolution of the defendant's claim

that we should exercise our supervisory authority to abrogate the excited utterance exception to the rule against hearsay. At trial, the prosecutor called Michael Rousseau, a West Hartford police officer, as a witness. Rousseau testified that, on the day of the shooting, he had received a call regarding "possible shots fired" and "a vehicle [that] crash[ed] into a building." Once he arrived at the scene of the crash, he witnessed Ortiz in the car with the deceased victim. Rousseau testified that Ortiz was "[v]ery distraught, very stressed, emotional, screaming, crying," and "in a serious state of emergency." When presented with dashcam video of these events at trial, Rousseau identified himself and Ortiz in the video at the scene of the crash. The video footage indicates that Ortiz, without Rousseau having asked her any questions to elicit responses, spontaneously volunteered that the perpetrators' vehicle was a tan Infiniti traveling on Capitol Avenue. She identified the perpetrators as the defendant and the elder Franqui, using their respective nicknames, "ATM" and "Cama."[4] When the trial court admitted this hearsay statement into evidence as an excited utterance, defense counsel objected only to "the prejudicial aspect of these two individuals being identified by their nickname[s] . . . ." Defense counsel otherwise conceded that "it'd be disingenuous to argue against" this application of the excited utterance exception and that the exception "seems to be satisfied." Now, on appeal, the defendant seeks to invoke our supervisory authority to abrogate the excited utterance exception as a matter of law.

"Supervisory authority is an extraordinary remedy that should be used sparingly . . . . Although [a]ppellate courts possess an inherent supervisory authority over the administration of justice . . . [that] authority . . . is not a form of free-floating justice, untethered to legal principle. . . . Our supervisory powers are not a last bastion of hope for every untenable appeal. They are an *extraordinary* remedy to be invoked only when circumstances are such that the issue at hand, [although] not

---

[4] The transcript misspells the elder Franqui's nickname as "Gama."

rising to the level of a constitutional violation, is none-theless of utmost seriousness, not only for the integrity of a particular trial but also for the perceived fairness of the judicial system as a whole. . . . Constitutional, statu-tory and procedural limitations are generally adequate to protect the rights of the [litigant] and the integrity of the judicial system. Our supervisory powers are invoked only in the rare circumstance [in which] these traditional protections are inadequate to ensure the fair and just administration of the courts. . . . Overall, the integrity of the judicial system serves as a unifying principle behind the seemingly disparate use of our supervisory powers . . . . Thus, we are more likely to invoke our supervisory powers when there is a pervasive and significant problem . . . or when the conduct or violation at issue is offensive to the sound administration of justice . . . .'' (Citations omitted; emphasis in original; internal quotation marks omitted.) *In re Aisjaha N.*, 343 Conn. 709, 724–25, 275 A.3d 1181 (2022). ''This demanding standard is perfectly appropriate when we are asked to reverse a conviction under our supervisory powers.'' *State* v. *Carrion*, 313 Conn. 823, 851, 100 A.3d 361 (2014).

An excited utterance, also known as a spontaneous utterance, provides a well established exception to the general rule against the admission of hearsay state-ments. Conn. Code Evid. §8-3 (2); see also, e.g., *State* v. *Tomlinson*, 340 Conn. 533, 584–85, 264 A.3d 950 (2021). It ''is defined as [a] statement relating to a star-tling event or condition made while the declarant was under the stress of excitement caused by the event or condition.'' (Internal quotation marks omitted.) *State* v. *Tomlinson*, supra, 584–85. Under the four-pronged test set forth in *State* v. *Kelly*, 256 Conn. 23, 41–42, 770 A.2d 908 (2001), ''[a] statement properly is admitted as a spontaneous utterance when (1) the declaration follows a startling occurrence, (2) the declaration refers to that occurrence, (3) the declarant observed the occurrence, and (4) the declaration is made under circumstances that negate the opportunity for deliberation and fabrication

by the declarant." (Internal quotation marks omitted.) *State* v. *Tomlinson*, supra, 585.

Connecticut appellate courts have developed a body of case law applying the fourth prong of *Kelly*. "In determining whether a declaration is admissible as a spontaneous utterance, the court should look at various factors, including [t]he element of time, the circumstances and manner of the accident, the mental and physical condition of the declarant, the shock produced, the nature of the utterance, whether against the interest of the declarant or not, or made in response to question, or involuntary, and any other material facts in the surrounding circumstances . . . ." (Internal quotation marks omitted.) *State* v. *Daley*, 161 Conn. App. 861, 884, 129 A.3d 190 (2015), cert. denied, 320 Conn. 919, 132 A.3d 1093 (2016); see also, e.g., *State* v. *Tomlinson*, supra, 340 Conn. 585.

"The ultimate question is whether the utterance was spontaneous and unreflective and made under such circumstances as to indicate absence of opportunity for contrivance and misrepresentation. . . . Whether an utterance is spontaneous and made under circumstances that would preclude contrivance and misrepresentation is a preliminary question of fact to be decided by the trial judge. . . . The trial judge exercises broad discretion in deciding this preliminary question, and that decision will not be reversed on appeal absent an unreasonable exercise of discretion." (Citations omitted; footnote omitted; internal quotation marks omitted.) *State* v. *Stange*, 212 Conn. 612, 617, 563 A.2d 681 (1989); see also, e.g., *State* v. *Tomlinson*, supra, 340 Conn. 585.

In support of his claim that this court should invoke its supervisory authority to abrogate the excited utterance exception to the hearsay rule, the defendant contends that the doctrinal foundation for that exception, which is that such statements are reliable because they are made "under such circumstances as to indicate absence of opportunity for contrivance and misrepresentation"; (internal quotation marks omitted) *State* v. *Stange*, supra, 212 Conn. 617; has been eroded by contemporary

social science research, as well as by decisions from other jurisdictions that have cited these studies, indicating that lies can indeed be "spontaneous." He relies on, for example, dictum in *Lust* v. *Sealy, Inc.*, 383 F.3d 580 (7th Cir. 2004), in which the United States Court of Appeals for the Seventh Circuit observed that "[t]he rationale for these exceptions is that spontaneous utterances, especially in emotional circumstances, are unlikely to be fabricated . . . because fabrication requires an opportunity for conscious reflection. . . . As with much of the folk psychology of evidence, it is difficult to take this rationale entirely seriously, since people are entirely capable of spontaneous lies in emotional circumstances. 'Old and new studies agree that less than one second is required to fabricate a lie.'" (Citations omitted.) Id., 588, quoting D. McFarland, "Present Sense Impressions Cannot Live in the Past," 28 Fla. St. U. L. Rev. 907, 916 (2001); see also, e.g., S. Baicker-McKee, "The Excited Utterance Paradox," 41 Seattle U. L. Rev. 111, 114 (2017) ("Psychological studies suggest that stressful events trigger the '[fight]-or-flight' response, and that deceptive statements are not only possible, they can be a natural component of the fight-or-flight response . . . . Not only are witness statements under intense stress not immutably truthful, but psychology also informs us that these witness statements are also inherently inaccurate. A traumatic event dramatically increases cognitive load, leading to perception deficits and distortions. Thus, excited witness perceptions tend to be unreliable for many reasons.").

We are not persuaded that the exercise of our supervisory powers is warranted in this case. At trial, the defendant could have introduced his arguments about the reliability of excited utterances in connection with the third or fourth prong of *Kelly*. By failing to raise these claims in the trial court, the defendant did not create a record about whether Ortiz had a sufficient opportunity to observe the driver of the Infiniti, for purposes of the third *Kelly* prong. See *State* v. *Kelly*, supra, 256 Conn. 41 (hearsay statement may properly be admitted into

evidence under excited utterance exception when "the declarant observed the occurrence"). Nor did the defendant, for purposes of the fourth *Kelly* prong, create a record about whether Ortiz' excited utterance was—or whether any excited utterance can ever be—"made under circumstances that negate the opportunity for deliberation and fabrication by the declarant." Id., 41–42. Thus, even if the defendant is correct that the broader excited utterance exception has a flawed doctrinal basis, the existing law governing this hearsay exception would have accommodated the defendant's challenge at trial to the admissibility of Ortiz' statement.[5] This counsels against the invocation of our supervisory authority to reach this unpreserved claim. See, e.g., *State* v. *Jacques*, supra, 353 Conn. 162 (declining to exercise supervisory authority in part because "the concerns raised by the defendant are adequately addressed under the present analytical framework"); *State* v. *Lockhart*, supra, 298 Conn. 577 (declining to adopt, via this court's supervi-

---

[5] See, e.g., *State* v. *Tomlinson*, supra, 340 Conn. 586–87 (citing cases); see also, e.g., id., 587–88 (fact that declarant's excited utterance answered question did not render it unreliable "[g]iven [the declarant's] emotional state and the surrounding circumstances," including that "the short passage of time between the shooting and her statements was insufficient to provide an opportunity for [her] to deliberate or to fabricate"); *State* v. *Slater*, 285 Conn. 162, 179–80, 939 A.2d 1105 ("[t]he victim's emotional state . . . indicates that her statement was made under circumstances that had negated the opportunity for deliberation or fabrication"), cert. denied, 553 U.S. 1085, 128 S. Ct. 2885, 171 L. Ed. 2d 822 (2008); *State* v. *Alicea*, 191 Conn. App. 421, 445, 215 A.3d 184 (2019) (trial court did not abuse its discretion when it "determined that the defendant had time to fabricate and embellish his statement"), aff'd, 339 Conn. 385, 260 A.3d 1176 (2021); *State* v. *Serrano*, 123 Conn. App. 530, 538, 1 A.3d 1277 (2010) (when declarant "implored the defendant not to strike the victim," her "emotional state indicate[d] that her statements were made under circumstances that negated an opportunity for deliberation or fabrication"), cert. denied, 300 Conn. 909, 12 A.3d 1005 (2011); *State* v. *Nelson*, 105 Conn. App. 393, 408, 937 A.2d 1249 ("[c]onsidering the infliction of injuries that [the declarant] experienced during the robbery, as well as the apparent pain and fear that he felt during the telephone call, we find unavailing the defendant's allegation that [the declarant's] statements to the 911 operator were not made under stress sufficient to negate the opportunity for fabrication"), cert. denied, 286 Conn. 913, 944 A.2d 983 (2008).

sory authority, claimant's proposed recording requirement for police interrogations "[g]iven the procedures already in place to prevent the admission into evidence of involuntary or untrustworthy confessions"). Accordingly, we decline to exercise our supervisory authority in this case to abrogate the excited utterance exception to the hearsay rule.

### IV

Finally, we address the defendant's claim that, because the state failed to present sufficient evidence that he was the driver of the Infiniti from which the shooting occurred, the jury could not reasonably have found him guilty of the charged offenses. First, the defendant argues that Ortiz' *Whelan* statement was insufficient evidence to identify him as the driver because it does not satisfy the heightened reliability requirements of *State* v. *Newsome*, supra, 238 Conn. 602–603. Second, he contends that Ortiz' excited utterance at the scene of the crash, identifying the defendant and the elder Franqui as the perpetrators in the Infiniti, was insufficient to support his conviction because it did not establish that the defendant was the driver. Third, he asserts that the jury should not have credited this excited utterance because Ortiz might not have seen him in the car at all. The state responds that the evidence was sufficient to support the jury's guilty verdict. We agree with the state.

"[T]he question of identity of a perpetrator of a crime is a question of fact that is within the sole province of the jury to resolve." (Internal quotation marks omitted.) *State* v. *Patrick M.*, supra, 344 Conn. 574. "The standard of review we apply to a claim of insufficient evidence is well established. In reviewing the sufficiency of the evidence to support a criminal conviction we apply a [two part] test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether [on] the facts so construed and the inferences reasonably drawn therefrom the [jury] reasonably could have concluded that the cumulative

force of the evidence established guilt beyond a reasonable doubt. . . .

"We note that the jury must find every element proven beyond a reasonable doubt in order to find the defendant guilty of the charged offense, [but] each of the basic and inferred facts underlying those conclusions need not be proved beyond a reasonable doubt. . . . If it is reasonable and logical for the jury to conclude that a basic fact or an inferred fact is true, the jury is permitted to consider the fact proven and may consider it in combination with other proven facts in determining whether the cumulative effect of all the evidence proves the defendant guilty of all the elements of the crime charged beyond a reasonable doubt. . . .

"Moreover, it does not diminish the probative force of the evidence that it consists, in whole or in part, of evidence that is circumstantial rather than direct. . . . It is not one fact, but the cumulative impact of a multitude of facts [that] establishes guilt in a case involving substantial circumstantial evidence. . . . In evaluating evidence, the [jury] is not required to accept as dispositive those inferences that are consistent with the defendant's innocence. . . . The [jury] may draw whatever inferences from the evidence or facts established by the evidence it deems to be reasonable and logical. . . .

"Finally, [a]s we have often noted, proof beyond a reasonable doubt does not mean proof beyond all possible doubt . . . nor does proof beyond a reasonable doubt require acceptance of every hypothesis of innocence posed by the defendant that, had it been found credible by the [jury], would have resulted in an acquittal. . . . On appeal, we do not ask whether there is a reasonable view of the evidence that would support a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that supports the [jury's] verdict of guilty." (Internal quotation marks omitted.) *State* v. *Brown*, supra, 345 Conn. 369–70.

As previously discussed, Ortiz' excited utterance and *Whelan* statement, along with Johanny Franqui's

*Whelan* statement, support the key finding underlying the jury's verdict of guilty, namely, that the defendant was the driver of the Infiniti from which the elder Franqui fired the shots that killed the victim and injured Rios. These statements also establish that the shooting was motivated by the altercation the night before, which culminated in the victim's participation in a shooting that injured Johanny Franqui's girlfriend.

Ordinarily, a sufficiency analysis would end here, with the identification of evidence in the record, viewed in the light most favorable to the jury's verdict, that squarely supports that verdict. The defendant, however, disputes the sufficiency of the foregoing evidence on three specific grounds. First, the defendant argues that Ortiz' *Whelan* statement was insufficient evidence to identify him as the driver of the Infiniti because it does not satisfy the heightened reliability requirements of *State* v. *Newsome*, supra, 238 Conn. 602–603. We disagree. As previously discussed in part II of this opinion, *Newsome*'s heightened reliability requirements do not apply to this case because, as the state argues, "ample evidence corroborates Ortiz' mutually corroborating out-of-court statements and supports the jury's verdict."

Second, the defendant argues that Ortiz' excited utterance identifying him and the elder Franqui as the perpetrators in the Infiniti from which the shots were fired is insufficient evidence of his guilt because she did not specifically identify him as the driver of the Infiniti in this excited utterance, requiring the jury to assume that he was the driver. This argument fails because, as previously discussed, the elder Franqui's admission to Johanny Franqui that he killed the victim provided the jury with a sufficient basis to reasonably conclude that the elder Franqui had not been driving and that the defendant—as the only other person whom Ortiz identified in the car—must have been the driver. Ortiz' excited utterance was admissible evidence that reasonably could have supported a guilty verdict on the basis that the defendant, as the only other person in the Infiniti, must have been its driver.

Third, the defendant argues that Ortiz' identification of the defendant as one of the perpetrators in the Infiniti "does not shed any light on the source of her accusation" and "was based on nothing more than a hunch" derived from the violent events of the previous night.[6] He argues that Ortiz "had received so much information alleging that [the defendant] and [the elder] Franqui . . . were going to kill [the victim] that she assumed that [the defendant] had to be involved, even though she never saw him. Nothing in the evidence . . . supports any inference that her 'excited utterance' was based on the fact that she saw [the defendant] in the car from which [the victim] was shot. Any such inference would flow from prejudice and speculation and, thus, [would] be patently unreasonable." In other words, the defendant argues that Ortiz may not have seen him in the car at all, even though she identified him by name in her excited utterance.

We reject the defendant's attempt to use the sufficiency claim to bootstrap an unpreserved claim that Ortiz' excited utterance should not have been admitted into evidence under the excited utterance exception to the hearsay rule. See *State* v. *Kelly*, supra, 256 Conn. 41 (hearsay statement properly is admitted into evidence as spontaneous utterance when "the declarant observed the occurrence"). "In assessing the sufficiency of the evidence . . . we consider *all* evidence admitted at trial." (Emphasis in original.) *State* v. *Ervin B.*, 202 Conn. App. 1, 9 n.6, 243 A.3d 799 (2020); see, e.g., *State* v. *Robles*, 348 Conn. 1, 29–30, 301 A.3d 498 (2023). "Claims of evidentiary insufficiency in criminal cases are always addressed independently of claims of evidentiary error." (Internal quotation marks omitted.) *State* v. *Chemlen*, 165 Conn. App. 791, 818, 140 A.3d 347, cert. denied, 322 Conn. 908, 140 A.3d 977 (2016).

On the other hand, to the extent that the defendant intends to argue that the jury should have given relatively

---

[6] The defendant also argues that the purported insufficiency of this excited utterance forced the jury to rely solely on Ortiz' *Whelan* statement. This is of no moment, insofar as that *Whelan* statement was both admissible evidence and sufficient, along with Johanny Franqui's *Whelan* statement, to establish the defendant's guilt.

little weight to Ortiz' excited utterance, he does not establish that it would have been unreasonable for the jury to credit this statement. The defendant's arguments, namely, that Ortiz might have incorrectly assumed that she saw him in the Infiniti and that the jury instead should have credited Ortiz' trial testimony that she could not positively identify the defendant as the driver, fail to establish that there is no "reasonable view of the evidence that supports the jury's verdict of guilty." (Internal quotation marks omitted.) Id., 817. Once Ortiz' excited utterance was admitted into evidence, in the absence of any objection from defense counsel, the jury was free to consider it for its truth and to weigh it against the other evidence that the defendant finds more compelling. See, e.g., *State* v. *Nichols*, 234 Conn. App. 455, 468–70, 343 A.3d 537 (2025) (explaining difference between weight and sufficiency analyses).

In sum, we decline the defendant's invitations to overrule *Whelan*, to revisit *Newsome*, and to abrogate the excited utterance exception to the hearsay rule, and we conclude that there was sufficient evidence admitted at trial to support the jury's verdict of guilty on all counts.

The judgment is affirmed.

In this opinion the other justices concurred.